[No. 2718. Decided January 8, 1898.]

F. S. GRIFFITH, *Respondent*, v. I. BURLINGAME, *et al.*, *Appellants*, AND THE NATIONAL BANK OF COMMERCE OF SEATTLE, *Intervenor and Appellant*.

RECEIVERS — EXECUTION SALES — RIGHT OF PURCHASER TO RENTS — ASSIGNMENT OF RENTS.

The appointment of a receiver to take charge of real property would not affect the right of one claiming the rents to bring an action to establish his claim, since the only result of such action would be to establish a claim for the receiver to pay.

A sale of real property on execution does not entitle the purchaser to the possession nor to the profits during the year of redemption, where the judgment debtor has made a *bona fide* assignment of a lease of the premises prior to the date of the execution sale.

A resolution of a milling corporation assigning the rents due under a lease of its mill to a mortgagee of the premises in consideration of an extension of payment constitutes a legal assignment, although for convenience the checks in payment of rent are drawn by the tenant in favor of the assignor company, and immediately assigned by the company to the mortgagee.

Appeal from Superior Court, King County.—Hon. ORANGE JACOBS, Judge. Reversed.

*George E. De Steiguer*, for appellant, National Bank of Commerce of Seattle.

*Falcon Joslin*, and *F. S. Griffith*, for respondent.

The opinion of the court was delivered by

DUNBAR, J.—On the 26th day of July, 1895, the Fremont Milling Company was, and for some time prior thereto had been, the owner of a milling plant, consisting of real estate, buildings, machinery, etc., and the intervenor and appellant in this case, the National Bank of Commerce, had a mortgage upon said milling plant to secure the payment of notes given by the milling company to the bank, aggregating $11,500, and further to secure interest on a note held by one George R. Carter for the sum of $1,750. About this date the Fremont Milling Company proposed to lease to the firm of I. Burlingame & Co. the said milling plant for the term of one year. At this time the mortgage held by the intervenor, the National Bank of Commerce, had become due by reason of non-payment of interest, and foreclosure proceedings could have been commenced. The Burlingame company desired some assurance that their possession would not be disturbed during the lease, and the Burlingame company and the Fremont Milling Company requested the bank to give such assurance. The bank proposed that if the milling company would assign to it the rents to become due upon such lease for the purpose of securing interest on the mortgage indebtedness, and to pay the fixed charges on the property, consisting of insurance, taxes, etc., they would consent that the lessee should retain possession for the period of one year. These propositions finally culminated in an assignment by the Fremont Milling Company to the bank afore-

said of the lease, the value of which was $300 per month. This assignment was made by resolution and the bank was notified of the same and requested that as an evidence of the action of the company it be furnished with a copy of the resolution, which was furnished it.     Afterwards the respondent, F. S. Griffith, became the purchaser of the milling plant at execution sale on judgment obtained against the Fremont Milling Company by the Gordon Hardware Company on February 25, 1896, which was some six months after the assignment of the lease.   After the sale upon the judgment, this action was brought by the respondent, Griffith against I. Burlingame, Charles Verd and Thomas Sanders, partners as I. Burlingame & Co., for the amount of the lease from the date of the execution sale until the expiration of the lease, and judgment was obtained by respondent in the lower court for something over $1,100. The defendants in the lower court undertook to set up the assignment to another party, which proof was denied by the court; but the court allowed the National Bank of Commerce to intervene and the matters and things indicated were set up as matters of defense by the intervenor to the action of the plaintiff.   At the close of the testimony of the defendants and intervenor, the plaintiff orally interposed a demurrer to the evidence, which demurrer was sustained by the court, and practically resulted in the verdict rendered by the jury.

A motion to dismiss has been interposed by the respondent on the ground that all parties appearing in the lower court were not served with a copy of the notice of appeal. We think there is no merit in this motion, and it will be overruled.

A great many questions are discussed in this brief, both by the respondent and the appellant, which we think are not pertinent.   One contention, however, of the appellants,

that this action cannot be maintained because a receiver had been appointed to collect the debts due the Fremont Milling Company, might be disposed of here. The record is rather obscure concerning the appointment of this receiver, but from what we can gather his appointment could not prevent this action, the effect of which would simply be, if it prevailed, to establish a claim which the receiver would pay. We think, however, that the court erred in sustaining a demurrer to this testimony. It is the contention of the respondent, and must have been the theory upon which the court rendered its judgment, that under section 519 of the Code of Procedure the execution purchaser was entitled to the rents, and several cases are cited from this court to sustain that contention, viz.: *Debenture Corp. v. Warren*, 9 Wash. 312 (37 Pac. 451); *Hardy v. Herriott*, 11 Wash. 460 (39 Pac. 958); *Knipe v. Austin*, 13 Wash. 189 (43 Pac. 25).

It is true that this court has held that, under the law which provides that

" The purchaser from the date of sale until a resale or redemption, and the redemptioner from the day of his redemption until another redemption, shall be entitled to the possession of the property purchased or redeemed, unless the same be in the possession of a tenant holding under an unexpired lease, and in such case shall be entitled to receive from such tenant the rents or the value of the use and occupation thereof during the same period,"

the purchaser's right dated from the date of sale. But it has never been the understanding of this court, and is not now, that the statute quoted was intended to affect anything more than the respective rights of the purchaser and the judgment debtor during the period of redemption, and certainly the purchaser under the statute and under all authority could obtain no more than the interest of the judgment debtor in the property purchased, and under the facts

proven in this case the Fremont Milling Company had no interest either in the possession, or in the lease, for it had been assigned to the intervenor long prior to the execution sale. There was no lien upon this property at the time of the assignment and there was nothing to prevent the owners from alienating it or alienating any interest not subject to the lien of the mortgage. It has been with great reluctance that this court has held that the right of possession was guaranteed to the purchaser from the date of sale by this statute, but was compelled to do so by what seemed to us the plain mandatory language of the statute. But we do not feel called upon to extend the scope of this law to the extent of depriving the owner of real estate of the right of alienating any interest he may have in it. It was evidently the intention of the legislature as expressed in this law to deal only with the respective rights of the purchaser and the owner, and the doctrine, outside of the statute, that the rent may be severed from the reversion either by act of the parties in interest or by operation of the law is so well established that the citation of authorities is unnecessary.

It is contended, however, by the respondent that the action of the Fremont Milling Company did not constitute a legal assignment, but that it was only a promise to assign. We think, however, that the record shows a valid assignment made by the Fremont Milling Company and accepted by the intervenor and carried into practical effect by the mutual actions of all parties concerned. It matters not that the check was drawn originally in favor of the Fremont Milling Company. This was evidently simply as a matter of convenience in bookkeeping, but the whole record shows that the intention was to carry out the terms of the assignment, and that they were carried into practical effect. This defense should have been granted by the court to the intervenor, and the only question, as we view the law,

28—18 WASH

that is left in the case is, was the the assignment made, and if the jury should determine that the assignment was made and carried into effect prior to the execution sale the plaintiff's case must fail.

The judgment will be reversed and the cause remanded with instructions to proceed in accordance with this opinion.

ANDERS and GORDON, JJ., concur.

REAVIS, J., concurs in the result.