[No. 24274. *En Banc.* November 6, 1933.]

SECURITY SAVINGS & LOAN SOCIETY, *Appellant,* v. L. P. DUDLEY *et al., Respondents.*[1]

*L. B. Donley,* for appellant.

*W. H. Abel* and *T. H. McKay,* for respondents.

STEINERT, J.—In this action, the plaintiff seeks to recover the rentals accruing during the period of redemption following a mortgage foreclosure and sale of certain premises. The principal defendants herein claim the same rentals by virtue of an assignment, by operation of law, prior to the mortgage foreclosure and sale of the property. A trial was had before the court without a jury, resulting in findings, conclusions and judgment in favor of the defendants. The plaintiff has appealed.

[1]Reported in 26 P. (2d) 384; 28 P. (2d) 276.

In 1909, Louise M. Demeree was the owner of the east half, and L. P. Dudley and wife and J. A. Mapes and wife were the owners of the west half of lot 4 in block 47 of Benn's Original Plat of Aberdeen. In that year, the owners, under a joint arrangement, erected a building known as the "Bijou Theatre Building," covering practically the entire lot. The building consists principally of a theatre extending from the front to the back of the lot, with two small shops located on either side of the theatre entrance and extending back forty or fifty feet from the front. The line dividing the east and west halves of the lot extends along and through the center of the theatre. By agreement of the parties, each, according to ownership, paid one-half of the total cost of construction, and each was to have the full rentals from the shop located on her, or their, respective half of the lot, but the theatre, which was the principal feature of the enterprise, was to be let by the owners jointly and the rents divided equally.

For seventeen years, the parties rented the building pursuant to their agreement, apportioning the rents accordingly. On May 17, 1926, while the theatre was being rented under a joint lease which was to expire on October 1st of that year, Mrs. Demeree, without the knowledge or consent of Dudley or Mapes, entered into a separate lease of the east half of the building, located on her portion of the lot, to the defendant D. & R. Theatres Company, Inc., for a period beginning October 1, 1926, and ending October 1, 1932. This lease was not recorded, although occupancy was taken thereunder.

During the period of the leases and up to December 1, 1928, Dudley and Mapes received their portion of the rents from the theatre, but after that date, and after Mrs. Demeree's death, the executors of the Demeree estate collected and retained the rentals in their

entirety, up to January 1, 1931, in the sum of $162.50 per month.

On December 4, 1928, two years and seven months after the giving of the separate lease by Mrs. Demeree, and prior to its expiration, and while the lessee was in possession and paying rent to the executors, the latter mortgaged the east half of lot 4, the part formerly owned by Mrs. Demeree, to the appellant to secure their note as such executors, in the sum of seven thousand dollars, maturing in monthly installments of $82.04. No specific mention of the rents was made in the mortgage.

Sometime prior to February 6, 1931, Dudley and Mapes began an action, cause No. 27737 in the superior court for Grays Harbor county, against the executors for an accounting of the rents collected by the latter. Security Savings & Loan Society, appellant herein and holder of the mortgage, was not made a party to that suit. Upon a trial of that action before the court, judgment was entered on February 6, 1931, in favor of Dudley and Mapes for $2,112.50, which represented one-half of the rentals theretofore collected by the Demeree interests. The judgment provided that all of the rentals from the theatre should thereafter, to the end of the lease, be paid into court, one-half thereof to be turned over to Dudley and Mapes as their portion of the accruing rents, and the other half to be applied in payment of their judgment.

On or about September 12, 1931, the appellant herein began a suit to foreclose its mortgage covering the east half of lot 4, owned by the Demeree estate. The D. & R. Theatres Company, Inc., and also Dudley and Mapes, with their wives, were made parties to the action, as claiming some interest in the property. Upon a trial had before the court, findings, conclusions and decree were entered awarding appellant recovery

upon the note and a foreclosure of its mortgage. The matter of possession of the premises and the right to the rents thereon from and after the date of the prospective execution sale was left undetermined, the court being of the opinion that it had no jurisdiction to adjudicate that matter in advance of the sale. The property was ultimately bought in by the appellant at the foreclosure sale for the amount of its judgment.

The present action was then begun for the specific purpose of having awarded to appellant the rents accruing on the separate lease during the period of redemption, that question having been left undetermined in the prior mortgage foreclosure action. From an adverse judgment, this appeal was taken.

The foregoing statement of the case presents the following outstanding facts and factors, expressed according to their legal effect and in their chronological order: (1) separate ownership of contiguous real estate; (2) joint construction of a building on the premises; (3) a joint lease of the building thus constructed, followed at its expiration by (4) a separate, unrecorded lease of the separate one-half of the building; (5) a mortgage covering the separate property; (6) a judgment against the owners of the separate property but affecting the rentals on the entire property; (7) foreclosure of the mortgage on the separate property; (8) a contest between the judgment creditor and the mortgagee purchaser at the foreclosure sale, regarding a proportionate part of the rentals accruing on the separate property. To be exact, the rentals here in dispute cover the time during which the unexpired portion of the lease overlaps the redemption period following the execution sale, that is, from April 9, 1932, to October 1, 1932.

The redemption statute, Rem. Rev. Stat., § 602, so far as it is applicable here, reads as follows:

"The purchaser from the day of sale until a resale or redemption, and the redemptioner from the day of his redemption until another redemption, shall be entitled to the possession of the property purchased or redeemed, unless the same be in the possession of a tenant holding under an unexpired lease, and in such case shall be entitled to receive from such tenant the rents or the value of the use and occupation thereof during the period of redemption."

The portion of the statute above quoted is followed by certain provisions concerning stipulations in mortgages with reference to possession by the mortgagor during the period of redemption, concerning also possession of land used for farming purposes and homestead rights, none of which provisions are we concerned with here.

The language of the statute seems plain enough, and there is nothing in its expression suggestive of any limitation upon its obvious meaning. It provides that the purchaser shall be entitled to possession of the property from the day of sale unless a tenant holding under an unexpired lease be in possession, in which latter event the purchaser shall be entitled to the rents. The rule of right thus announced is general in its application, and indicates no exceptions other than as contained in the subsequent provisos.

The respondents argue that the lease created a new estate, that the rents accruing thereunder were assignable, either by voluntary action of the lessor or by operation of law, as in this case, and that the award, by decree of court, to respondents created a severance of the rents from the reversion. Respondents conclude that, since the mortgage did not cover the rents, and since neither the mortgagor nor the mortgagee was, at the date of the sale, entitled to them, the same having already passed by respondents' judgment, there-

fore the purchaser at the mortgage foreclosure sale acquired no right to them.

We think that the statute in its entirety is declarative of a rule of policy in this state, intended to put all persons upon notice of the rights of the parties mentioned therein respecting the possession of property and the rentals accruing therefrom, during the period of redemption. Those who deal with, or seek to acquire interests or rights in, such property are governed by the statute, and may not depreciate or limit its application or effect, to the detriment of those protected thereby. Manifestly, the mortgagor owner himself would not be entitled to retain the rents during the redemption period, and it would seem logically to follow that he can not confer any greater right upon an assignee, either voluntarily or by operation of law. To hold otherwise would enable the mortgagor to accomplish indirectly what he could not do directly.

When the mortgage was taken by the appellant, there was nothing of record to apprise it that the mortgagor's estate had been lessened, or that its rights as purchaser under the statute were in any way affected. Whether the situation would have been different had the lease been recorded prior to the mortgage, is a question with which we are not here concerned, and do not decide.

The case of *Griffith v. Burlingame,* 18 Wash. 429, 51 Pac. 1059, is relied upon by respondents, and we must confess that the case, strictly construed, does support their contention. In that case, a mortgage upon certain real estate was held by a bank. At a time when the mortgage had become due by reason of non-payment of interest, and therefore subject to foreclosure, the owner of the property desired to lease the premises to I. Burlingame & Co. The prospective lessee desired

some assurance that possession would not be disturbed during the term of the lease, and the bank proposed that, if the owner would assign to it the rents to become due upon the lease, for the purpose of securing the interest on the mortgage and to pay fixed charges on the property, it, the bank, would consent that the lessee might retain possession of the premises for one year. The proposal was accepted, and culminated in an assignment of the rentals to the bank.

Afterwards, one Griffith became the purchaser of the property at an execution sale. After the sale, Griffith began an action for the "amount of the lease" from date of the execution sale until the expiration of the lease. The question was squarely presented as to who was entitled to the rents, the assignee or the purchaser at the execution sale. While the particular situation presented by the facts of that case disposed itself somewhat more equitably in favor of the assignee, who was also the mortgagee, than does the one here, where the assignee is a third party, nevertheless the court laid down the rule, broad enough to include this case, that, as between the assignee and the purchaser at the execution sale, the former had the prior and prevailing right to the rentals. It may be noted that the assignee in the *Griffith* case was not asserting any right to the rents by virtue of its being the mortgagee, but simply as assignee. The court said on p. 433:

"It has been with great reluctance that this court has held that the right of possession was guaranteed to the purchaser from the date of sale by this statute, but was compelled to do so by what seemed to us the plain mandatory language of the statute. But we do not feel called upon to extend the scope of this law to the extent of depriving the owner of real estate of the right of alienating any interest he may have in it. It was evidently the intention of the legislature as ex-

pressed in this law to deal only with the respective rights of the purchaser and the owner, and the doctrine, outside of the statute, that the rent may be severed from the reversion either by act of the parties in interest or by operation of law is so well established that the citation of authorities is unnecessary.''

The court recognized the mandatory effect of the statute, as it had already done in previous cases, but expressed itself as being unwilling to extend the scope of the law to the extent of depriving the owner of real estate of the right to alienate whatever interest he might have in the property. We think that here it is not a question of extending the law beyond its intended scope, but rather a question of giving full effect to the obvious and intended meaning of the statute. While the owner should not be deprived of any *right* that he may legally have to alienate *his property*, he should not be permitted to alienate a right which, under the statute, he does not possess. If the owner has no right, under the statute, to insist upon the retention of the rentals unless the mortgage given by him so stipulates, it is difficult to see how he can, or why he should, confer any greater right by assignment, voluntarily or by operation of law. The purchaser's rights being fixed by the statute, and the assignee being charged with notice of the existence and effect of the statute, those rights can not be defeated by the voluntary act of the owner nor by operation of law as against him.

The *Griffith* case seems to stand alone in this jurisdiction, and we do not find it cited further upon the point here under consideration. In so far as it is inconsistent with the views herein expressed, that case must be overruled.

We think that the court was in error in refusing to award to the appellant the rentals during the redemp-

tion period, and its judgment is therefore reversed, with direction to the trial court to enter a judgment in accordance with the views herein expressed.

MAIN, MITCHELL, MILLARD, and GERAGHTY, JJ., concur.

TOLMAN, J. (dissenting)—I agree with the majority in one respect and that is that the case of *Griffith v. Burlingame,* 18 Wash. 429, 51 Pac. 1059, is directly in point and controlling here unless it be overruled.

The *Griffith* case was decided more than thirty-five years ago, and the construction thus put upon the statute then became a part of the established law of this state as effectually as though the legislature had then amended the statute. For all these years, successive legislatures have acquiesced in that construction, the public without protest has complied with its terms, and it has clearly become a rule of property which has been a part of every mortgage executed in this state since it became effective.

None of the rules or excuses so often laid down by courts for overruling time-honored cases here exist. The statute, as construed in the *Griffith* case, does not deny or defeat any natural right, work any injustice, or, in any respect, produce unwholesome, unnatural or unjust effects. The rule being known, it is a just one, with which all can comply without suffering evil consequences. Applied in cases where the disposition of the rents has been a *bona fide* one and where there has been no attempt to defraud the mortgagee or the purchaser at sheriff's sale, the rule of the *Griffith* case is just and commendable. The mere fact that a majority of the court, as now constituted, is dissatisfied with the reasoning upon which the *Griffith* case is founded does not justify wiping out the long

established law under the guise of overruling the former decision.

As I have before said, the rule of the *Griffith* case has become the established law of the state, as much so as any other duly established law, and, speaking for myself individually, I feel that my official obligation binds me to uphold, maintain and apply it in common with all other established laws of the state.

For these reasons, I dissent.

BEALS, C. J., and BLAKE, J., concur with TOLMAN, J.

HOLCOMB, J. (concurring in the result)—I concur in Judge Tolman's dissent as to overruling the *Griffith* case. However, the result of affirming the judgment in this case on the facts of this case can be attained without overruling the case mentioned, it being distinguishable. For that reason, I concur in the result.

ON PETITION FOR REHEARING.

[*En Banc.* January 15, 1934.]

PER CURIAM.—Respondents have filed a petition asking that the opinion in this case be clarified, and for a further rehearing of the case.

The request for clarification is based upon the statement that there is now a dispute between counsel as to whether, under the decision of this court above referred to, the appellant is entitled not only to the rentals accruing from that portion of the building located on the east half of Lot 4, Block 47, Benn's Original Plat of Aberdeen (the portion of the lot covered by appellant's mortgage), but also to the rentals accruing from that portion of the building occupying the west half of the lot (the portion owned by respondents). Appellant's answer to the petition confirms the fact that there is such dispute.

It is apparent from a reading of the opinion that this court was concerned only with the rentals accruing from the east half of the above lot, the portion covered by appellant's mortgage, and was in no way passing upon the disposition to be made of the rentals accruing from the west half. We make this statement only for the benefit and assistance of counsel, and not because the opinion requires it.

The petition for clarification and for rehearing is denied.