[No. 22937. Department One. April 9, 1931.]

WESTERN LOAN & BUILDING COMPANY, *Appellant*, v.
GORDON MIFFLIN, *Respondent*.[1]

[1]Reported in 297 Pac. 743.

34

*Van Dyke & Thomas* (*James Ingebretsen,* of counsel), for appellant.

*Ballard & Houghton,* for respondent.

PARKER, J.—This is an appeal by the Western Loan & Building Company, a corporation, from an order of the superior court for King county awarding to Gordon Mifflin, as general receiver of E. A. Gabryel & Co., Inc., a fund amounting to $1,269.70, which is a final balance which remained in the hands of Frank A. Noble, as special receiver of property mortgaged by Gabryel & Co. to the loan company, and deposited by him with the clerk of the superior court in pursuance of an order of that court made in an action foreclosing the mortgage.

The loan company claims the whole of that fund as subject to its mortgage lien in partial satisfaction of a three thousand dollar deficiency remaining unpaid upon its mortgage debt following the sale of the property under decree of foreclosure of its mortgage. The general receiver claims the fund for the benefit of the general receivership and the general creditors thereof, and that the loan company's deficiency claim against the fund gives it no greater right thereto than that of a general creditor of Gabryel & Co.

There has not been brought to us any statement of facts or any portion of the record of the proceedings in the mortgage foreclosure, the special receivership, or the general receivership. We are advised of the facts only by the somewhat voluminous findings of the trial court and its brief final order based thereon, from

which this appeal is taken. From that source, we think the controlling facts may be sufficiently summarized as follows:

On March 22, 1928, Gabryel & Co. borrowed from the loan company the sum of seventy thousand dollars for the purpose of constructing an apartment house on a lot in Seattle owned by it, and then executed and delivered to the loan company a promissory note evidencing such indebtedness, and also, to secure such indebtedness, executed and delivered to the loan company a mortgage upon the lot and apartment house to be constructed thereon,

"Together also with the rents, issues, profits and income from said premises, with the right at any time after default or maturity to collect the same, and, to enforce this provision, the mortgagee or holder shall be entitled to the appointment of a receiver.

"Together also with the tools, appliances, equipment, heating, plumbing and lighting facilities, machinery, supplies, fixtures, and all personal property belonging to the mortgagor upon or within said premises used or proper or necessary to constitute the said premises habitable, usable or operating unit—all said property being designated and deemed for the purpose of this instrument a part of the realty."

At the time of the execution of the mortgage Gabryel & Co. also executed and delivered to the loan company an assignment reading, so far as need be here noticed, as follows:

"KNOW ALL MEN BY THESE PRESENTS: THAT WHEREAS [Here is recited the execution of the note and the mortgage and description of the property.]

"WHEREAS, the rents and income from said premises are also by the terms of said mortgage subject to the lien thereof.

"Now, THEREFORE, to make said lien upon the rents and income more readily enforceable and in consideration of the premises and for a valuable consideration paid to the undersigned by Western Loan and Build-

ing Company, the receipt whereof is acknowledged, the undersigned hereby bargains, sells, assigns and transfers to said Western Loan and Building Company all rent and income accruing or to accrue from said premises and the tenants who now or hereafter may occupy the same and every part thereof; . . ."

Prior to the making of the loan, it was agreed between Gabryel & Co. and the loan company that the building should be constructed and fixtures should be installed therein according to plans and specifications then prepared therefor. The building was constructed, and there were installed therein fixtures as contemplated by the mortgage, consisting of electric ranges, wall beds, electric washing machines, electric iron, electric dryer, and an electrical refrigerating system. Most of these fixtures were acquired under conditional sale contracts, title thereto remaining in the vendors thereof pending payment of the respective purchase prices.

The seventy thousand dollars was advanced by the loan company to Gabryel & Co. as the construction of the building progressed, but, upon completion of the building, there remained unpaid a large amount of labor and material claims, and an industrial insurance premium due the state, incident to the construction of the building.

On November 20, 1928, the East Madison Lumber Company and others who had furnished material and labor in the construction of the building, commenced an action in the superior court seeking foreclosure of their lien claims against the property. On November 24, 1928, the loan company intervened in that action by filing its complaint in intervention, seeking foreclosure of its mortgage, there then being default in the performance of certain conditions therein to be performed by Gabryel & Co.; the loan company claim-

ing its mortgage lien, by virtue of its priority, to be superior to the material and labor claims sought to be foreclosed.

On January 11, 1929, the court, upon application of the loan company in the foreclosure action, appointed Frank A. Noble special receiver of the mortgaged property, to take charge thereof and collect the rents and income therefrom pending the foreclosure action. Noble then qualified and took charge of the property. On February 11, 1929, Gabryel & Co. was adjudged insolvent, and Gordon Mifflin was thereupon appointed its general receiver and, as such, took charge of its affairs generally, though the special receivership over the property here in question in charge of Noble was in no way disturbed by the general receivership.

Thereafter, Noble, as special receiver, was by the court authorized to make certain expenditures from the rents collected by him for the purpose of keeping the property in repair and preventing waste thereof, including the making of certain payments upon some of the fixtures which were held under conditional sale contract, to prevent their being reclaimed and removed by the vendors under their conditional sale forfeiture rights.

On September 3, 1929, the loan company's mortgage, the lien claims for labor and material furnished in the construction of the building, and a lien claim of the state for industrial insurance incident to the construction of the building, were foreclosed by decree of the court directing that the property be sold in the method provided by law, and the proceeds of the sale be applied to the payment of the judgments awarded by the decree as follows:

"First: To the payment of the lien of the state of Washington in the sum of $418, with interest and costs;

"Second: To the payment of the mortgage lien of Western Loan & Building Company in the sum of $77,-822, together with interest, costs and attorney's fees;

"Third: To the payment of certain labor liens as set out in said judgment;

"Fourth: To the payment of certain material liens as set out in said judgment."

The foreclosure decree did not make any adjudication touching the disposition of the rents and income of the property pending the foreclosure action; that is, there was no foreclosure against that fund.

On October 19, 1928, the property was sold by the sheriff as provided by the decree, and, for want of other bidders, it was sold to the loan company for the sum of $79,123.71; which amount paid the judgment of the state for $418 in full, paid the judgment of the loan company, except the sum of three thousand dollars which still stands as a deficiency judgment against Gabryel & Co. and its general receiver, the amount of the sale being insufficient to render any money available for payment upon any of the labor and material claims, the awards for which remain deficiency judgments in favor of such claimants and against Gabryel & Co. and its general receiver.

Soon thereafter, the special receiver rendered to the court a final report of his doings as such, the property having passed out of his hands by the sale in pursuance of the decree of foreclosure, showing that there remained in his hands unexpended the net sum of $1,-269.70. On November 25, 1929, there came on for hearing before the court, all parties interested being represented by counsel, the matter of settlement and approval of the special receiver's final report and the question of disposition of the net balance of the funds remaining in his hands. The special receiver's report was then approved, but the matter of determining what

final disposition should be made of the fund of $1,-269.70 remaining in his hands was postponed for a further hearing thereon, and the receiver directed to deposit that fund with the clerk of the superior court to await further order as to its disposition, which he accordingly did, and was then discharged.

Thereafter, the controversy over the $1,269.70 fund became one solely between the loan company, claiming it in partial satisfaction of its deficiency claim and judgment of three thousand dollars against Gabryel & Co., and Mifflin, the general receiver of Gabryel & Co., claiming it as the property of Gabryel & Co. and the general receivership, subject to the payment of the expenses of that receivership and the general creditors of Gabryel & Co. This controversy, coming on regularly for hearing before the court, and being submitted for final decision, resulted in findings of fact, the controlling ones, as we view this controversy, being above summarized, and the final order of the court awarding the $1,269.70 to Gordon Mifflin as general receiver of Gabryel & Co. It is from this order that the loan company has appealed to this court.

 Under the mortgage lien theory prevailing in our state and in many other states, it appears to be well settled law that a mortgaging of real property gives no right to the mortgagee to have applied towards the payment of the mortgage debt the rents or income of the mortgaged property; this, manifestly, because the mortgage is nothing more than a lien upon the property to secure payment of the mortgage debt, and in no sense a conveyance entitling the mortgagee to possession or enjoyment of the property as owner. Rem. Comp. Stat., § 804, reads:

"A mortgage of real property shall not be deemed a conveyance so as to enable the owner of the mortgage to recover possession of the real property, without a foreclosure and sale according to law."

Rem. Comp. Stat., § 741, authorizes the appointment of a receiver for mortgaged property pending foreclosure as follows:

"A receiver may be appointed by the court in the following cases:— . . .

"4. In an action by a mortgagee for the foreclosure of a mortgage and the sale of the mortgaged property, when it appears that such property is in danger of being lost, removed, or materially injured; . . ."

This is the only statutory authority in this state for the appointment of a receiver of mortgaged property pending a mortgage foreclosure, and plainly does not in the least suggest that rents or income of the mortgaged property can be subjected to the payment of the mortgage debt.

In *Norfor v. Busby,* 19 Wash. 450, 53 Pac. 715, it was held that, because of these statutory provisions, a showing that the mortgaged property would not be sufficient to satisfy the mortgage debt, was not ground for the appointment of a receiver of the mortgaged property pending foreclosure. This view was adhered to in *Balfour-Guthrie Investment Co. v. Geiger,* 20 Wash. 579, 56 Pac. 370, and *Collins v. Gross,* 51 Wash. 516, 99 Pac. 573, though in the latter it was recognized that the appointment of a receiver pending foreclosure to preserve the mortgaged property from waste was authorized. To that extent, and for that purpose only, it is conceded here that the appointment of this special receiver was authorized.

It is contended in behalf of the loan company, in substance, that the provisions of the mortgage authorized the appointment of the special receiver to collect the rents and income of the mortgaged property, to the end that such net rents and income should be applied towards the payment of the mortgage debt. The only provision of the mortgage brought to our at-

tention by the trial court's findings, the mortgage not otherwise being brought to our attention, is that following the description of the mortgaged property, reading as follows:

"Together also with the rents, issues, profits and income from said premises, with the right at any time after default or maturity, to collect the same, and, to enforce this provision, the mortgagee or holder shall be entitled to the appointment of a receiver."

This provision is silent as to how the rents and income of the mortgaged property pending foreclosure shall be applied, and is, we think, not inconsistent with an intent on the part of Gabryel & Co., the mortgagor, and the loan company, the mortgagee, that such rents and income shall be applied only to maintenance of the property and preventing its waste pending foreclosure, in so far as the mortgage rights of the loan company are concerned. In *Norfor v. Busby,* 19 Wash. 450, 53 Pac. 715, the force and effect of Rem. Comp. Stat., § 804, above quoted, was drawn in question, wherein Judge Reavis, speaking for the court, said:

"The statute is also expressive of the public policy of the state vesting the right of the possession in the mortgagor absolutely until a decree and sale. A similar statute has long existed in the state of Oregon (Gen. Laws of Oregon, 1845-64, p. 228, § 323). The force and effect of such legislation is fully discussed by the supreme court of the United States in the case of *Teal v. Walker,* 111 U. S. 242 (4 Sup. Ct. 420). The court said:

" 'This provision . . . gives effect to the view of the American courts of equity that a mortgage is a mere security for a debt, and establishes absolutely the rule that the mortgagee is not entitled to the rents and profits until he gets possession under a decree of foreclosure. For if a mortgage is not a conveyance, and the mortgagee is not entitled to possession, his claim to the rents is without support.'

"In that case a specific stipulation was written in the mortgage in which the mortgagee agreed to deliver possession of the mortgaged premises; and the court further said:

" 'The case of the defendant in error can not be aided by the stipulation in the defeasance of August 19, 1874, exacted by the mortgagee, that Goldsmith and Teal would, upon default in the payment of the note secured by the mortgage, deliver . . . possession of the mortgaged premises. That contract was contrary to the public policy of the state of Oregon, as expressed in the statute just cited, and was not binding on the mortgagor or his vendee, and, although not expressly prohibited by law, yet, like all contracts opposed to the public policy of the state, it cannot be enforced.'

"And the circuit court of appeals of the United States for this circuit has recently, in the case of *Couper v. Shirley,* 75 Fed. 168, decided that a stipulation in a mortgage that, upon the institution of foreclosure proceedings, a receiver of the rents and profits might be appointed on the application of the mortgagee, is contrary to the public policy of Oregon, as shown by the statute heretofore mentioned. The legislature of Michigan, in 1843, modified the common law mortgage to a mere security, and under such statute the supreme court of Michigan, in *Wagar v. Stone,* 36 Mich. 364, held:

" 'The mortgagor being entitled under the statute to the possession and consequently to the rents and profits of the mortgaged premises until such time as his title is divested by a perfected foreclosure, it is not competent to cut short his rights in this regard by means of a receiver appointed in the foreclosure suit.'

"The same court also held in *Hazeltine v. Granger,* 44 Mich. 503 (7 N. W. 74), that although the mortgagor so stipulates, a receiver cannot be appointed on a mere default to take the rents and profits of the mortgaged land."

We note that the Oregon statute in question in *Teal v. Walker* and *Couper v. Shirley,* cited by Judge Reavis, is in the exact words of our Rem. Comp. Stat.,

§ 804, above quoted. The Michigan statute drawn in question in the Michigan cases cited by Judge Reavis, was evidently of the same import, though its exact language does not appear therein. So we are led to the conclusion that the mortgage provision last above quoted does not give to the loan company the right to have any portion of the net rents and income collected by the special receiver and now in the hands of the clerk of the superior court applied to the payment of the mortgage debt.

It is contended in behalf of the loan company that the rent assignment above quoted, in any event, calls for the subjecting of the net rents and income of the mortgaged property, pending foreclosure, to the payment of the mortgage debt. That assignment, made at the time of the execution of the mortgage, and as a part of the same transaction between Gabryel & Co., mortgagor, and the loan company, mortgagee, manifestly means no more than the last above quoted provision embodied in the mortgage. That assignment, as the mortgage provision, is silent as to how the rent and income of the mortgaged property, pending foreclosure, shall be applied, and, we think, is not inconsistent with an intent on the part of Gabryel & Co., the mortgagor, and the loan company, the mortgagee, that such rents and income shall be applied only to maintenance of the property and preventing its waste pending foreclosure, in so far as the mortgage rights of the loan company are concerned. Any other construction of these mortgage and assignment provisions, it would seem, should not be favored by the court in the light of the law as above noticed.

Some contention is made in behalf of the loan company rested upon the theory that the possession of the mortgaged property by the special receiver was, in

effect, the possession of the loan company, and that it should be viewed as a mortgagee in possession. This, we think, is sufficiently answered in the negative by our conclusion above noticed that the possession of the special receiver was not to the end that the net rents and the income, pending foreclosure, should be applied to the payment of the mortgage debt, but only to the end that the net rents and income should be applied as far as necessary to the maintenance of the mortgaged property and the saving of it from waste, pending foreclosure.

Of course, we are not here concerned with the right of the loan company to the possession of the mortgaged property during the redemption period, under Rem. Comp. Stat., § 602, after the foreclosure sale at which the loan company became the purchaser of the property. Whatever rights it then had in the property, was as purchaser and not as mortgagee. Besides, all of the $1,269.70 here in question represents the net rents and profits accruing and collected by the special receiver pending foreclosure, and before the sale at which the loan company became the purchaser.

Final contention is made in behalf of the loan company that it is, in any event, entitled to be reimbursed from the $1,269.70 in the hands of the clerk of the superior court to the extent of $418 thereof, the amount of the adjudged lien of the state for premium it became entitled to incident to the construction of the building. We are unable to follow this contention to the conclusion sought by counsel for the loan company. That premium lien claim of the state manifestly was payable from the amount for which the sale of the property was made to the loan company. It was adjudged a lien upon the property and that fund. It was paid from the fund created by the loan company's bid and purchase. The loan company, in so creating that

fund, did not do so as mortgagee, but as bidder and purchaser at the sale. This contention seems to us to lose sight of the fact that in these two positions the loan company's rights are quite different.

The Mayfair Manor, a corporation, became the grantee of Gabryel & Co. by deed of conveyance of the property after the commencement of the foreclosure action. The general receiver was appointed as receiver of both of these corporations, and took charge of the affairs of both of these corporations as a single receivership; this because of their insolvency and because of their intimate relationship, the exact nature of which is of no consequence in our present inquiry. Of course, the awarding of the $1,269.70 to Gordon Mifflin as general receiver, means the awarding of that fund to him as receiver for both corporations, as their respective interests and that of their respective creditors may appear. We have referred to the general receivership as of the affairs of Gabryel & Co. alone throughout this opinion merely for convenience of expression.

We conclude that the order of the superior court awarding the $1,269.70 to Gordon Mifflin as general receiver of the affairs of Gabryel & Co. and Mayfair Manor must be affirmed. It is so ordered.

MAIN, MITCHELL, and HOLCOMB, JJ., concur.

TOLMAN, C. J., concurs in the result.