[No. 24435. *En Banc.* November 13, 1933.]

CHAS. F. CLISE, as *Trustee, Respondent,* v. ANDREW BURNS *et al., Defendants,* PRUDENTIAL SECURITIES, INC., *Appellant.*[1]

*Allen, Froude, Hilen & Askren,* for appellant.

*Roberts, Skeel & Holman* and *Harry Henke, Jr.,* for respondent.

HOLCOMB, J.—This is an appeal from an order appointing a receiver for mortgaged premises in Seattle during the pendency of the suit. The appointment of

[1] Reported in 26 P. (2d) 627; 29 P. (2d) 1119.

the receiver was based upon the amended complaint, the answer of appellant, and certain affidavits set out in the statement of facts.

The order of the lower court appointing the receiver was to the effect that the receiver was to act in the nature of a custodian to manage the real property, collect the rents, income and profits therefrom until sheriff's sale, the court specifically stating that the order was made because of the peculiar relationship of the parties to this litigation and because of the provisions contained in the trust deed set forth in respondent's complaint mortgaging the rents, issues and profits of the mortgaged premises and providing for the appointment of a receiver as a matter of strict right in the event of an action to foreclose the mortgage.

On February 7, 1925, Henry G. Niblett and wife were the owners in fee of lot 4, block 64, A. A. Denny's Addition to Seattle, King county, Washington. On that date, they executed a ninety-nine year lease to Andrew Burns, a widower, as lessee. Burns executed a deed of trust to W. D. Comer & Co., as trustee, on April 1, 1925. The trust deed contained a provision, numbered article VIII, comprising four and one-half closely printed pages in respondent's brief, which is too long to reproduce in the proper compass of this opinion. Its plain purport, however, was that it was intended to provide, and repeated in many forms, as the trial court stated, that

" . . . the rents, issues and profits of the mortgaged premises were mortgaged and also that a receiver should be appointed as a matter of strict right in the event of an action to foreclose the mortgage and without regard to the then value of the premises and without regard to the solvency of the mortgagor or owner of the premises,"

the receiver to have the right to dispossess the tenants, collect the money, pay operating expenses, and apply the balance ''toward the payment of the indebtedness secured by the instrument and of any deficiency decree which may be entered in such proceeding.''

The trust deed was given as a mortgage to secure the payment of a series of mortgage bonds aggregating ninety thousand dollars and maturing serially.

This action was commenced in July, 1932, to foreclose the mortgage for an alleged default in sinking fund payments. The amended complaint alleges that, at the time the action was begun, the principal of the mortgage indebtedness had been reduced thirty-three thousand dollars, leaving fifty-seven thousand dollars of the principal unpaid, for which recovery was prayed, together with other sums secured by the trust deed, in all aggregating $58,084.72, and for trustee's and attorney's fees in addition thereto. The complaint also shows that there had been paid to the trustee by the mortgagor or its successors $5,368.60, which had not been applied in payment of any specific obligation of the mortgagor. There had also been paid to the trustee for the benefit of bondholders, $3,694.34, of which $2,607.46 was being held to pay the last half of the 1931 taxes. There was more than enough money in the hands of the trustee for the bondholders to pay the interest amortization becoming due in May, June and July, and to pay the Federal income tax payments becoming due in May, 1932.

On November 6, 1926, Burns reassigned his leasehold interest to his lessors, Niblett and wife, who expressly assumed and agreed to pay the obligations under the leasehold. They continued to be the owners of the property until June, 1932, when they executed two conveyances, one to Charles W. Stimson, purporting to be a conveyance of the fee to the property and

the lessor's interest to the leasehold estate previously held by Burns, and, at the same time, they conveyed to Prudential Securities, Inc., a corporation, appellant herein, the lessee's interest in the former leasehold held by Burns.

W. D. Comer, having become financially involved, on May 16, 1931, resigned the trusteeship, and another person named as successor trustee refused to act as such, which resignation and refusal were filed in the office of the county auditor, and respondent was thereupon elected and chosen trustee in accordance with the terms of the trust deed. Stimson, who was made a defendant in this action, still owns the fee simple title, and is receiving the rental payable under the ninety-nine year lease. Physical possession of the property was in the Hotel Caledonian, Inc., but immediately after appellant obtained its interest in the leasehold, it took possession thereof from Stimson, in so far as such possession could be obtained, received the rental from the Hotel Caledonian, Inc., paid the ground rent due under the ninety-nine year lease, and exercised dominion and control over the property.

There is no pleading or showing that the predecessor of respondent was ever in actual or physical control of the premises before his resignation. The only allegation to that effect is one to the effect that respondent's predecessor was in complete control of the building, as required by the deed of trust, and did receive all income from the property and did employ and distribute the same as set forth in the deed of trust. This, however, is no more than stating that Comer received the rents, issues and profits of the building after his appointment until his resignation from the mortgagor and his successors. It is apparent, therefore, from the record that the mortgagor and his successors had paid all the interest on the obligation and

reduced the principal by approximately forty-four per cent. There is no claim that there are any delinquent taxes or assessments or unpaid insurance premiums of any kind. Whatever default there was, was that of Comer, the trustee. It is true that the Nibletts stepped into the shoes of the mortgagor and immediately proceeded to collect the rents from the tenant and deposit them in the proper depositary for that purpose under the trust deed.

It is clear from the above statement that Comer never was a trustee in actual possession of the real estate. He never was, therefore, a mortgagee in possession, nor is respondent.

We have held that, even under a void foreclosure, where a mortgagee, after default, takes possession in good faith, he holds as a mortgagee in possession regardless of the consent of the mortgagor. *Investment Securities Co. v. Adams,* 37 Wash. 211, 79 Pac. 625; *Sloane v. Lucas,* 37 Wash. 348, 79 Pac. 949; *Sawyer v. Vermont Loan & Trust Co.,* 41 Wash. 524, 84 Pac. 8; *Gravelle v. Canadian & American Mtg. & Trust Co.,* 42 Wash. 457, 85 Pac. 36. See, also, *Peterson v. Philadelphia Mtg. & Trust Co.,* 33 Wash. 464, 74 Pac. 585.

We have also recognized the rights of a trustee who, under an agreement with the mortgagor, is placed in possession of the mortgaged premises and retains the rents, issues and profits thereof for the benefit of the mortgage liens. *State ex rel. Allen v. Superior Court,* 164 Wash. 515, 2 P. (2d) 1095.

However, the provisions in the trust deed now before us are of the same import as those involved in *State ex rel. Gwinn, Inc., v. Superior Court,* 170 Wash. 463, 16 P. (2d) 831, decided after the decision by the lower court herein. In that case, we followed

the rule that had been laid down in *Norfor v. Busby,* 19 Wash. 450, 53 Pac. 715; reapproved in *Western Loan & Building Co. v. Mifflin,* 162 Wash. 33, 297 Pac. 743; and distinguished the *Allen* case, *supra,* on its own peculiar facts, to the effect:

(1) That a receiver of mortgaged property to collect the rents during the pendency of foreclosure is authorized by Rem. Rev. Stat., § 741, only in case it appears that the property is in danger of being lost, removed, or materially injured; and it is not a sufficient showing of waste or mismanagement to show the security is not sufficient to pay the debt.

(2) That a provision in a real estate mortgage, pledging the rents and profits as security for the debt and consenting to the appointment of a receiver to collect the same pending foreclosure, will not be enforced, since it is in violation of the policy of the law that a mortgage is a lien and not a conveyance, and vests the right of possession in the mortgagor until after foreclosure.

If consistency is observed in our adjudications, those pronouncements are conclusive of the case before us upon the principles therein stated, precluding the relief granted by the trial court in appointing a receiver.

The order in this case must be reversed. It is so ordered.

This decision shall be without prejudice to the right of respondent to move herein upon statutory grounds, under Rem. Rev. Stat., § 741, upon matters arising subsequent to the entry of judgment below.

MAIN, MILLARD, BLAKE, and GERAGHTY, JJ., concur.

STEINERT, J. (dissenting)—There are two questions in this case, one of law and one of fact, the latter being possibly one of mixed law and fact.

The first question is whether a mortgagee in possession is entitled to receive the rents, issues and profits accruing under the mortgage in a case where such rents, issues and profits are specifically covered by the mortgage. The second question is whether the mortgagee in this case was, under the facts presented, "in possession" at the time that the action was commenced.

Taking up the first question, it appears to have been early settled in this state that the rights of a mortgagee in possession will be protected by the court. *Peterson v. Philadelphia Mortgage & Trust Co.*, 33 Wash. 464, 74 Pac. 585; *Sloane v. Lucas*, 37 Wash. 348, 79 Pac. 949; *Sawyer v. Vermont Loan & Trust Co.*, 41 Wash. 524, 84 Pac. 8; *Gravelle v. Canadian & American Mortgage & Trust Co.*, 42 Wash. 457, 85 Pac. 36.

From these decisions, some uncertainty may have resulted as to the exact nature and extent of the protection that the courts would give to mortgagees in possession. If there ever was any such uncertainty, however, it has been dispelled by recent decisions, which, by differentiation, point out the true rule and its applicability. Those decisions are cited and relied upon by the parties to this action. *Western Loan & Building Co. v. Mifflin*, 162 Wash. 33, 297 Pac. 743; *State ex rel. Allen v. Superior Court*, 164 Wash. 515, 2 P. (2d) 1095; *State ex rel. Gwinn, Inc., v. Superior Court*, 170 Wash. 463, 16 P. (2d) 831.

The *Gwinn* case, *supra*, an *En Banc* decision, pointed out the distinction between the other two cases, a distinction which, it seems to me, is applicable and controlling here. As stated in the *Gwinn* case, the *Allen* case foreclosed the question of the validity of an *executed* agreement to place the mortgagee in posses-

-sion of the mortgaged premises prior to foreclosure and sale; that, on the other hand, the *Western Loan & Building Co.* case foreclosed the question of the en-forcibility of an *executory* agreement to place the mortgagee in possession of mortgaged property prior to foreclosure and sale. Thus it will be seen that, as the law now stands, the question in each case is whether the agreement to place the mortgagee in possession is an executed or an executory agreement. Under the first instance, the right of possession prior to foreclosure and sale prevails; in the second, it does not.

So, then, the only question left is whether the mortgagee in this case was in possession by virtue of an executed agreement, or is merely seeking to gain possession by virtue of an executory agreement.

By the specific terms of the mortgage, or deed of trust, the mortgagor agreed to deliver to the trustee the actual, physical, sole and exclusive possession of the premises immediately upon completion of the building to be constructed thereon, with the right in the trustee to collect the rents, income, issues and profits of the mortgaged premises, and to apply them to the payment of all expenses of management and operation, repairs, ground rental, taxes, assessments, etc., and the balance to be paid into a sinking fund.

The application for the appointment of a receiver came before the trial court entirely upon affidavits. No testimony was taken. According to the prevailing opinion, it was alleged in the complaint

" . . . that respondent's predecessor was in complete control of the building as required by the deed of trust and did receive all income from the property and did employ and distribute the same as set forth in the deed of trust."

The answer of the appellant Prudential Securities, Inc., which is the only answer in the record, controverted that allegation. Respondent's affidavits supported his allegation. The affidavit of the appellant Niblett, the former owner of the fee, and the affidavit of the appellant Stimson, the present owner, at least conceded that respondent was entitled to possession on condition that the ground rental was kept paid by him, and the other provisions of the trust discharged. The affidavits on behalf of appellant Prudential Securities, Inc., asserted the right of the latter to receive the rentals by virtue of its leasehold interest which it acquired from the original lessor. The affidavits of the respective parties are reciprocally contradictory, either positively or else inferentially.

With this situation before it, the trial court ordered "that a receiver be appointed *pendente lite* in the nature of a custodian to manage the property, collect the rentals, income and profits therefrom until date of sheriff's sale." The order of appointment provided that the *status quo* of the property should be preserved pending the litigation, and that the receiver and his attorney should act without compensation.

In my opinion, that was a wise, practical and provident disposition of the matter as it then stood before the court. Whether the trustee *was* in possession under the terms of the deed of trust, was a matter to be finally determined, and presented some very delicate questions, both of law and of fact. To deny the appointment of a receiver *pendente lite* permits the appellant Prudential Securities, Inc., to collect and dispose of the rentals in the meantime; to grant the receivership would permit the impounding of such rentals until the rights of the parties could properly be determined.

I think that the court's action was correct and

142

proper, and therefore dissent from the majority opinion.

BEALS, C. J., and TOLMAN, J., concur with STEINERT, J.