[No. 26498. Department Two. November 24, 1937.]

DEBENTURES INCORPORATED, *Appellant*, v. EMIL ZECH
*et al., Respondents.*[1]

*Palmer, Askren & Brethorst (B. E. Lutterman,* of
counsel), for appellant.

*Arthur C. Bannon,* for respondents.

HOLCOMB, J.—This appeal is from a judgment en-
tered upon the verdict of the jury in favor of respond-
ents in an action brought by appellant for unlawful
detainer.

On May 1, 1931, the Seattle Savings and Loan
Association, by its warranty deed, conveyed title to

[1]Reported in 73 P. (2d) 1314.

James Canny and Amalia Canny, husband and wife, to the north 45 feet of lot three (3), block thirteen (13) of the Summit addition to the city of Seattle, King county, Washington, being also described as the Murrayhill Apartments, located at 1810 Fifteenth avenue, Seattle, Washington, on which there was an apartment house, for the total purchase price of thirty-five thousand dollars. This property will be hereinafter designated as the "Apartments." Concurrently therewith, James Canny executed a promissory note to the Seattle Savings and Loan Association in the sum of thirty thousand dollars, payable in monthly installments of $275, and maturing May 1, 1936, which note was in turn secured by a first mortgage on this real estate, and five thousand dollars was paid in cash. This mortgage was duly recorded.

On February 13, 1934, Canny executed a written instrument relating to the above described realty whereby he purported to assign the rents and other rights he enjoyed over the property to the Seattle Savings and Loan Association as additional security for the above mentioned note. This instrument was also thereafter recorded. It provides:

"ASSIGNMENT OF RENTS

"FOR AND IN CONSIDERATION of the sum of One Dollar ($1.00) to me in hand paid, and as additional security for a loan of $30,000.00 made by the Seattle Savings and Loan Association on note secured by a mortgage upon North 45 feet of Lot three (3), Block Thirteen (13) of the Summit Addition of Seattle, dated May 1, 1931, and recorded May 14, 1931, in Vol. 1202 of Mtgs. at Page 67, under Auditor's File No. 2671783 Records of King County, Washington, the undersigned hereby assigns, transfers and sets over to the Seattle Savings and Loan Association all the rent due and to become due upon said described premises, with full power to manage the building located upon said premises and to lease premises thereon as the Association shall see

fit, until the full payment of said loan. The proceeds of said rents to be applied at the option of the Seattle Savings and Loan Association in payment of taxes, upkeep, interest or upon the principal amount of said loan.

"Dated at Seattle, Washington, this 13th day of February 1934.                    JAMES CANNY"

It is noteworthy that the redecoration services of respondents, hereinafter referred to, were rendered subsequent to the execution of this instrument, beginning on or about July 26, 1935.

The Seattle Federal Savings and Loan Association, having superseded the Seattle Savings and Loan Association, assigned the note and mortgage in question to Debentures Incorporated on June 28, 1935, and this assignment was recorded. It is admitted that the Seattle Federal Savings and Loan Association and appellant have the same president, secretary, officers, trustees, and the same place of business.

Debentures Incorporated was an outgrowth of the Seattle Savings and Loan Association occasioned by the federalizing of that association and the segregation of the assets. Debentures Incorporated is entirely controlled by Seattle Federal Savings and Loan Association. The Apartments is one of the properties that had to be liquidated when Debentures Incorporated was organized in order to secure the requisite approval of the Federal authorities for the segregation of the assets.

On August 15, 1935, respondent addressed a letter to Canny concerning redecoration work in the Apartments which provided:

"Mr. J. Canney                    Aug. the 15th, 1935.
Seattle, Wn.
Dear Sir:

"After quoting you certain prices verbally in connection with certain work already completed and some

work now being completed in your apartment house at 1810 15th Ave. this city I am herewith submitting to you a complete list of the various items and their costs to you and do ask you to O. K. this proposal and return a copy of same to me, *the same to be taken as an order for this work authorized by you or and by any other agency interested in this building at the present time:* . . .

"All of this work will be done in a first class manner, preparing defective plaster, sanding and patching all woodwork carefully before applying finish, all decorative work to be done artistically and with the aim of improving the actual rental value of the apartment.

"It is understood between you and me that I am to take the entire cost of all work done by me, both labor and material in full out in rental for 1 apartment, and as long as these prices quoted you in this proposal are in effect, my rental shall be as now $40.00 per month for apt. no. 301, and if a higher rental should be asked of me, my prices for this work done after this will be higher as prices are given based on prevailing prices.

"*If for any reason whatsoever you should be unable to furnish me with an apartment as payment for this work now being done, it shall be understood that you are to pay me any balance still due on this in cash.*

"A bill will be mailed to you on the first day of each month showing you the actual balance due and the amount of my rental will be credited to you on this bill.                 Respectfully submitted

EMIL H. ZECH

"Accepted:  Aug. 20, 1935 by JAMES CANNY."
(Italics ours.)

It appears that respondents did not reside at the Apartments on August 1, 1935, but Canny rented apartment number 301 of the Apartments to respondents, and they entered into possession thereof shortly after the above mentioned date, and were tenants at the time of the execution of the agreement dated August 15, 1935. Pursuant to this agreement, respondents expended several hundred dollars in work, labor, and

material, and accordingly received credit on the rent agreed upon, but respondents contend a balance is still due them of paid rental for services rendered in the redecoration of the Apartments.

On January 27, 1936, the mortgage being in default, in consideration of three hundred dollars paid to him, Canny executed and delivered to appellant a written surrender of possession and assignments of rents. It is significant that, up until this time, Canny was left in possession and continued to have authority to collect rents, to manage, to operate, and to maintain the Apartments. After the execution of this instrument, appellant went into possession of the property immediately, operated the same, collected all rents, and paid all operation costs.

Appellant states that it was apprised for the first time of the agreement relating to redecoration between respondents and Canny only after the execution of the instrument by which Canny surrendered possession and assigned the rents due to appellant, when one of appellant's officers called on respondents to demand rent for the apartment which they were occupying. It is difficult to perceive how appellant or its predecessor in interest, the Seattle Savings and Loan Association, could have failed to discern the deficiency of forty dollars per month in rental receipts much sooner.

On February 13, 1936, Debentures Incorporated commenced suit in the superior court to foreclose the mortgage executed by Canny and also filed of record a notice of *lis pendens*. On March 25, 1936, a decree of foreclosure was entered therein, and on May 9, 1936, the mortgagee purchased the property in question, namely, the north 45 feet of lot 3, block 13 of Summit addition to Seattle, King county, Washington, at sheriff's sale; and thereafter the sale was confirmed

by order of the superior court on May 25, 1936, and certificate of purchase was issued to appellant.

Respondents have been occupants of apartment No. 301 of the Apartments for a period longer than one and one-half years at a monthly rental of forty dollars, and they now hold and occupy it. Appellant asserts there became due on account of rent of these premises on May 9, 1936, forty dollars, no part of which has been paid to appellant. On June 2, 1936, notice of demand in writing was served upon appellant for payment of the rent alleged to be due or that respondents surrender the premises to appellant within three days. Respondents refused to yield possession within the three-day period or to pay the rent alleged to be due, and thereafter this action was commenced in unlawful detainer by appellant to obtain possession from respondents and to recover from them value in damages during the period of their unlawful detainer of this property. A writ of restitution was issued therein, but respondents posted a bond of three hundred dollars and were permitted to remain in possession.

At the conclusion of the trial, appellant moved for judgment in its favor and for a directed verdict, which were denied. The jury returned a verdict in favor of respondents, and thereafter appellant made its motion for a judgment n. o. v. or, in the alternative, for a new trial, which were denied, and judgment was entered on the verdict of the jury.

Appellant contends respondents are unlawfully holding over and continuing in possession of these premises without the permission of appellant to its damage, and denies that it at any time maintained Canny in charge of the Apartments or rented apartment No. 301 to respondents.

Appellant sets forth a number of assignments of error, but the only one that merits consideration is

whether the trial court erred in denying appellant's motion for judgment n. o. v. and a directed verdict.

The instrument relating to assignment of rents, dated February 13, 1934, provided in part:

". . . the undersigned hereby assigns, transfers and sets over to the Seattle Savings and Loan Association all the rent due and to become due upon said described premises, with full power to manage the building located upon said premises and to lease premises thereon as the Association shall see fit, until the full payment of said loan. . . ."

Appellant urges that Seattle Savings and Loan Association never exercised its option under this assignment, and that the testimony shows Canny remained in possession and continued to manage the same and to collect the rents due from February 13, 1934, to January 27, 1936, in the same manner as he did from May 1, 1931, to February 13, 1934. It is true that the testimony so indicates. It appears that this assignment of rents was executed because of threatened suit by a third party which might involve the rents of the property.

On cross-examination, Duncan, president of the Seattle Federal Savings and Loan Association, testified there was some threatened litigation by a third party that might involve Canny and, hence, the rents of the property. He also testified that, if some litigant would get judgment against Canny and take possession before the association foreclosed, such litigant would be able to collect the rents. He further testified that the instrument for the assignment of rents was executed "for our mutual protection."

The language in this instrument for the assignment of rents, management and lease of the building, and the exercise of these powers, was not conditioned upon the exercise of an option. The only reference to an option in this assignment is to the effect that the rents

collected might be applied at the option of the Seattle Savings and Loan Association in payment of taxes, upkeep, interest, or upon the principal amount of the loan.

■ Appellant cites Rem. Rev. Stat., § 602 [P. C. § 7917], and *Security Sav. & Loan Society v. Dudley,* 175 Wash. 50, 26 P. (2d) 384, 28 P. (2d) 276, to the effect that the purchaser is entitled to possession of the property from the day of sale unless a tenant holding under an unexpired lease be in possession, in which event the purchaser shall be entitled to the rents, and thus the mortgagor or his assignee would not be entitled to rents during the redemption period. Appellant cites cases to the effect that, under the mortgage lien theory prevailing in this jurisdiction, it is well settled that a mortgaging of real property gives no right to the mortgagee to have applied to the payment of the mortgage debt the rents or income of the mortgaged property, and therefore the instrument effecting the assignment of rents was a nullity. The cases include *Western Loan & Building Co. v. Mifflin,* 162 Wash. 33, 297 Pac. 743; *State ex rel. Gwinn, Inc. v. Superior Court,* 170 Wash. 463, 16 P. (2d) 831, 19 P. (2d) 1119, 87 A. L. R. 620; *Clise v. Burns,* 175 Wash. 133, 26 P. (2d) 627, 29 P. (2d) 1119.

With this rule, we are in accord. However, these cases are distinguishable from the case at bar, and the instant case does not fall within the purview of the rule the above cited cases announce. It becomes material to inquire into the validity of the assignment of rents of February, 1934; because, if the assignment is valid, that constitutes an important evidentiary fact in establishing Canny's agency.

In *Western Loan & Building Co. v. Mifflin, supra,* coincident with the execution of the mortgage the mortgagor executed an instrument providing for the

assignment of rents. In both *State ex rel. Gwinn, Inc. v. Superior Court, supra,* and *Clise v. Burns, supra,* the mortgage or deed specifically provided for the assignment of rents. Hence, in these cases there was either an assignment of rents specifically provided for in the lease or in a separate instrument executed coincident with the execution of the lease, and thus were in violation of the policy of the law that a mortgage is a lien and not a conveyance, and vests the right of possession in the mortgagor until after foreclosure.

In this case, however, the assignment of rents was not provided for in the original mortgage or in any other instrument executed coincident with the mortgage. The assignment of rents as of February 13, 1934, was executed almost three years after the mortgage and, unlike the cases cited, constituted an entirely new and valid supplemental contract. It is entirely competent for parties to a contract by mutual assent to modify a contract provided the modifications do not make it illegal or violative of public policy. *Inman v. Roche Fruit Co.,* 162 Wash. 235, 298 Pac. 342; *Winn v. Stanton,* 146 Wash. 328, 262 Pac. 645; 6 R. C. L. 914, § 298; 13 C. J. 589, § 604.

The mortgage formed the basis of the consideration for the new contract. The purpose of the above mentioned assignment was to protect the interest of the mortgagee and to insure that payments would be made by the mortgagor on the mortgage indebtedness pursuant to the terms of the mortgage. The mortgagor was in a precarious financial position, and this assignment strengthened the mortgagee's position under the mortgage and at the same time caused the institution of foreclosure proceedings against the mortgagor to be deferred. Thus, the new contract was clearly supported by adequate consideration.

In the ultimate, the question to be determined

which is decisive of this case is whether or not the assignment of rents on February 13, 1934, or any other acts of appellant or its predecessors in interest, created a principal and agent relationship between appellant and Canny so that Canny was clothed with sufficient authority to authorize the execution of the contract in question for redecoration.

The instrument for assignment of rents and the policy adopted by the mortgagee subsequent to its execution clothed Canny with authority to act for the mortgagee, since, notwithstanding the broad language of the assignment, he was left in possession and continued to have authority to collect rents, to manage and operate, and to maintain the Apartments; and therefore was vested with implied authority, as a necessary incident to the exercise of his powers, to order and to direct that reasonable expenditures be made for the purpose of redecoration. The mere fact that the mortgagee had sufficient confidence in him so as to find it unnecessary to exercise any appreciable amount of supervision over him, is immaterial.

An agent in possession of buildings or business properties has implied authority to make the necessary repairs on the premises, and in doing so may bind his principal.

"An agent to manage, supervise, or oversee the business or property of his principal has powers coextensive in scope with the business intrusted to him, that is to say, implied authority to do in the business or with the property whatever is usually and customarily done in businesses or with property of the same kind in the same locality; . . .

"Authority exists sufficient to bind the principal by acts or contracts of such an agent if they are reasonably necessary to keep the property in good repair, or the business a going concern, or requisite to the protection of the interests intrusted to the agent's management." 2 C. J. S. 1241-42, § 103.

It is unfortunate that respondents did not have the mortgagee join in the contract, but we are convinced the mortgagee was bound thereby even though it did not sign the same. By reason of the execution of the assignment of rents of February 13, 1934, coupled with the fact that Canny was left in possession with authority to collect rents, to manage and operate the Apartments, and the surrounding circumstances, Canny had implied authority to enter into a contract for redecoration with respondents. Canny had this authority to act by reason of the fact that he had divested himself of practically all authority which he could exercise over the Apartments and by reason of the fact that he had been left in possession to operate and to maintain the Apartments, and so stated to respondents.

Agency may be inferred from a course of dealing or of conduct by parties or may be established by estoppel. *Ankeny v. Young Bros.,* 52 Wash. 235, 100 Pac. 736; *Staats v. Pioneer Ins. Ass'n,* 55 Wash. 51, 104 Pac. 185; *Ross v. Johnson,* 171 Wash. 658, 19 P. (2d) 101.

"The apparent authority of an agent to act as the representative of his principal is to be gathered from all the facts and circumstances in evidence, and ordinarily this is a question of fact for the jury's determination." 21 R. C. L. 856-7, § 34.

"The liability of the principal for the acts and contracts of his agent is not limited to such acts and contracts of the agent as are expressly authorized, necessarily implied from express authority, or otherwise actually conferred by implication from the acts and conduct of the principal. All such acts and contracts of the agent as are within the apparent scope of the authority conferred on him, although no actual authority to do such acts or to make such contracts has been conferred, are also binding upon the principal." 2 Am. Jur. 82-3, § 101.

"Apparent authority is the power of an apparent agent to affect the legal relations of an apparent principal with respect to a third person by acts done in accordance with such principal's manifestations of consent to such third person that such agent shall act as his agent." 1 Restatement of the Law of Agency, 25, § 8.

Also, see *Wharton v. Tierney-Toner Co.,* 126 Wash. 216, 217 Pac. 998, and *Pacific Storage Warehouse & Distributing Co. v. Bjorklund,* 188 Wash. 269, 62 P. (2d) 39.

In *Delaney v. Nelson,* 132 Wash. 472, 232 Pac. 292, we pointed out that agency does not necessarily depend upon specific appointment, and that the authority to make collection is dependent upon all of the surrounding circumstances and the acts of the parties.

"It may be suggested that there is no proof that Poulson was ever made the agent of appellant, but agency may be implied from all the attending circumstances. To state the rule in a negative way, a person may so use his property with relation to others that he will be estopped to deny an agency." *Bertrand v. Hunt,* 89 Wash. 475, 154 Pac. 804.

"The final element of an equitable estoppel is that the person claiming it must have been misled into such action that he will suffer injury if the estoppel is not declared. That is, the person setting up the estoppel must have been induced to alter his position, in such a way that he will be injured if the other person is not held to the representation or attitude on which the estoppel is predicated." 10 R. C. L. 697, § 25.

If respondents were not compensated pursuant to their agreement with Canny, the latter being clothed with implied authority to execute the same, appellant would be unjustly enriched.

Zech testified on direct that Canny stated it would be a good idea to increase the value of the building by improving it. On re-cross, Canny's testimony shows that appellant had knowledge of the fact that redecora-

tion of the building was in progress, and the treasurer of appellant commended Canny upon the quality of the work and commented on how much it improved the building. That the labor and materials furnished enhanced the value of the building is not questioned.

The judgment is affirmed.

STEINERT, C. J., BLAKE, BEALS, and ROBINSON, JJ., concur.