In the Matter of **FEDERAL SHOPPING WAY, INC.**, a Washington corporation, Debtor.

**BANK OF CALIFORNIA, N. A.**, Tacoma, Washington, Appellant,

v.

Thomas L. McQUAID, Appellee.

**LIFETIME FEDERAL SAVINGS & LOAN ASSOCIATION**, Appellant,

v.

Thomas L. McQUAID, Appellee.

**EVERGREEN FIRST FEDERAL SAVINGS & LOAN ASSOCIATION**, Appellant,

v.

Thomas L. McQUAID, Appellee.

**REPUBLIC NATIONAL LIFE INSURANCE COMPANY**, Appellant,

v.

Thomas L. McQUAID, Appellee.

Nos. 71–1306, 71–1333, 71–1334 and 71–1339.

United States Court of Appeals, Ninth Circuit.

March 14, 1972.

Edward M. Lane (argued) of Murray, Scott, McGavick & Graves, Tacoma, Wash., for Bank of California.

Stanley J. Burkey (argued), of Burkey, Marsico, Rovai & McGoffin, Tacoma, Wash., for Lifetime Federal Savings & Loan Assn.

J. A. Vander Stoep, of Murray, Armstrong & Vander Stoep, Chehalis, Wash., for Evergreen First Federal Savings & Loan Assn.

Lawrence Bailey (argued), Willard Hatch, of Johnson, Quigley, Hatch & Loveridge, Seattle, Wash., for Republic National Life Ins. Co.

William N. Moloney (argued), Lisle Guernsey, of Davis, Wright, Todd, Riese & Jones, Seattle, Wash., for appellee.

Before MERRILL, BROWNING and KILKENNY, Circuit Judges.

KILKENNY, Circuit Judge:

These appeals are taken from the district court's order approving the report of the Referee-Special Master in a corporate reorganization proceeding under the provisions of Chapter X of the Bankruptcy Act. [11 U.S.C. § 501, et seq.] The basic facts with reference to the Bankruptcy are adequately outlined in this court's opinion, In re Federal Shopping Way, Inc., 433 F.2d 144 (9th Cir. 1970), and we need not here repeat them.

The issues before us arose on an order to each of appellants to show cause why the Trustee should not collect past and future rents from the debtor's premises that had been paid to several lending institutions. Appellant mortgagees responded, and after a series of hearings, the Referee-Special Master filed a report in which he found that various rental assignments [1] made by the debtor to appellants were invalid and unenforceable. Additionally, he found that even if the assignments were enforceable, the Trustee would be entitled to collect the rents and use them for the administration of the bankrupt shopping center properties.

## FACTS

We shall briefly outline the facts with reference to each appellant. None of the facts are in serious dispute.

## BANK OF CALIFORNIA [Cal]

In May, 1963, Federal Shopping Way, Inc. [FSW] executed and delivered to Cal a mortgage on certain real property in the Shopping Way, securing payment of a mortgage installment note executed the same date in the sum of $94,000.00, payable in monthly installments on the 5th of each month. The mortgage was duly recorded. Contemporaneous with the execution of the mortgage, FSW executed an assignment of rents under a lease between FSW and the Federal Way Pharmacy, Inc. [Pharmacy], said assignment being duly recorded. Pharmacy paid the monthly rental from June, 1963, directly to Cal. Following the March 20, 1969, temporary stay and

---

1. All of the rental assignments were executed prior to a 1969 statutory amendment to R.C.W. 7.28.230, validating such assignments.

show cause order of the district court, Pharmacy began, in April, paying the rental directly to the Trustee.

## LIFETIME FEDERAL SAVINGS & LOAN ASSN. [Lifetime]

In August, 1963, FSW executed and delivered to Lifetime a note and mortgage on certain real property located in the Shopping Way. The note calls for monthly payments. In addition to the mortgage, Lifetime acquired an assignment of all rental income and profits from the mortgaged premises through FSW's execution of two rental assignments, which referred to specific tenants. Pursuant to these rental assignments, the tenants paid rents first to Cal under a collection agreement and then directly to Lifetime. We are here only concerned with Federal Way Thriftway, which paid rent to Lifetime in the amount of $1,600.00 per month from October, 1963. Since April 11, 1969, the tenant has been paying its rent directly to the Trustee. There is no evidence that Lifetime ever took possession of the mortgaged premises.

## EVERGREEN FIRST FEDERAL SAVINGS & LOAN ASSOCIATION [Evergreen]

Evergreen holds two mortgages executed and delivered by FSW on Shopping Way property, one dated in April, 1964, and one in January, 1966. The secured notes call for monthly payments, including reserve for taxes and insurance. At the same time, FSW executed and delivered two rental assignments to Evergreen. There was testimony that these loans would not have been made had such assignments not been executed and delivered. Evergreen received rentals from various tenants and from October, 1967, received rent from Capital Finance Corporation. Since May 5, 1969, the tenant has been paying its rent directly to the Trustee. Evergreen never took possession of the mortgaged premises.

## REPUBLIC NATIONAL LIFE INSURANCE COMPANY [Republic]

In August, 1961, FSW mortgaged certain real property in the Shopping Way to Federal Old Line Life Insurance Company to secure a certain indebtedness. The note and mortgage were later assigned to National Bank of Washington and thereafter assigned by the latter to Republic. In June, 1965, Republic and FSW entered into an extension agreement and on the same date FSW executed an assignment of the Utah Building lease. Republic received rent from Utah Wholesale Grocery from that date until May, 1969. Since the latter date, the tenant has been paying its rent directly to the Trustee. Federal Way Cleaners, a renter, had paid its rent directly to Republic until September, 1968, at which time the former began paying rental directly to a receiver *pendente lite* and thereafter to the Trustee. The assignment provides that Republic was not entitled to the rents until default and by its terms covers leases as well as rents. There is no evidence that Republic ever took possession of the mortgaged premises.

## ISSUES

The paramount issue before us is whether the assignments of the rentals are valid and enforceable under Washington law, as it then existed. After disposing of the principal issue, we shall examine into the nature and extent of the powers of a bankruptcy court in a Chapter X proceeding.

## VALIDITY OF ASSIGNMENTS

In the state of Washington, a real estate mortgage creates only a lien upon the property with title and the right to possession of the property remaining in the mortgagor. The public policy of the State of Washington on the subject at the time was codified in RCW 7.28.230, providing:

"A mortgage of real property shall not be deemed a conveyance so as to enable the owner of the mortgage to

recover possession of the real property, without a foreclosure and sale according to law."

This statute was construed at an early date by the Washington supreme court in Norfor v. Busby, 19 Wash. 450, 53 P. 715 (1898). The court there held that a mortgagee had no claim to the rents and profits prior to foreclosure and sale. To hold otherwise, the court said, would allow the mortgagees to exercise incidents of possession prior to foreclosure contrary to the public policy of the state. The court in construing the statute noted: "The statute is also expressive of the public policy of the state vesting the right of the possession in the mortgagor *absolutely until a decree and sale.*" [Emphasis supplied.] The *Norfor* court quoted extensively from the opinion of the United States Supreme Court in Teal v. Walker, 111 U.S. 242, 251, 4 S. Ct. 420, 28 L.Ed. 415 (1884), which construed in the same manner an Oregon statute in identical language. The statute was next before the court in Western Loan & Bldg. Co. v. Mifflin, 162 Wash. 33, 297 P. 743 (1931). There, the mortgage contained a clause authorizing the mortgagee to collect the rents and profits after default and, like here, the mortgagor executed and delivered to the mortgagee *a separate assignment of rents.* On foreclosure, the mortgagee contended that the separate assignment entitled it to the rents and profits pending foreclosure. The court rejected the contention, although it did intimate that the rents might be applied by a court of equity toward the maintenance of the property and the prevention of waste.

Another case emphasizing the same viewpoint is State ex rel. Gwinn, Inc. v. Superior Court, 170 Wash. 463, 16 P.2d 831 (1932). There, the mortgage expressly provided that the rents and issues and profits were mortgaged to secure the payment of the mortgage debt and that, after commencement of foreclosure proceedings, the mortgagee would be entitled to the appointment of a receiver to collect the rents pending foreclosure and apply the rents to the mortgage obligation. The *Gwinn* court held that the mortgage provisions with reference to the rents and profits actually amounted to an agreement to place the mortgagee in possession prior to foreclosure and sale and was, therefore, unenforceable as a contract in violation of the public policy of the state. The court there stressed its conclusion that a mortgagee was not entitled to possession of the mortgaged premises, *either prior or subsequent to default.*

State ex rel. Allen v. Superior Court, 164 Wash. 515, 2 P.2d 1095 (1931), is readily distinguishable. In *Allen,* the mortgagor and the first mortgagee appointed a trustee to operate the property and to collect the rents and profits and apply them towards certains objects, including payment of taxes. The court appointed a receiver of the mortgagor's tenant who had abandoned the property. It properly held that the receiver should pay the Trustee such rental for the property as the court should adjudge reasonable, the rents to be received and disbursed by him in accordance with the express terms of the trust under which he was functioning. In so holding, it recognized the validity of the decisions in *Norfor* and *Western Loan & Building,* but goes on to distinguish the facts in those cases from the one then before it. The opinion was by a divided court, the dissenting judge feeling that the statute should control. *Gwinn,* decided subsequent to *Allen,* distinguished the latter as follows:

"In State ex rel. Allen v. Superior Court, 164 Wash. 515, 2 P. (2d) 1095, upon which respondents rely, we held that the facts of that case were not within the rule laid down in Norfor v. Busby, supra, and Western Loan & Building Co. v. Mifflin, supra, with which 'we are in complete accord.' . . . The majority opinion in State ex rel. Allen v. Superior Court, supra, foreclosed the question as to the validity of an executed agreement to place the mortgagee in possession of the mortgaged property prior to foreclosure and sale." (16 P.2d 834.)

In other words, the backbone of the *Allen* decision, as explained in *Gwinn*, was that in the former the mortgagee was placed in actual possession of the property and, therefore, entitled to the rents and profits.

Clise v. Burns, 175 Wash. 133, 26 P.2d 627 (1933), revised 29 P.2d 1119 (1934), is of no help to appellants. In *Clise,* the mortgagee, in good faith, took possession of the mortgaged premises after default. Following the example in *Allen,* the majority in the *Clise* court held that where the mortgagee actually takes possession of the property, he is presumed to have the right to collect the rents, even prior to foreclosure and sale. Of course, there is no evidence in the cases before us that any one of the mortgagees took or attempted to take possession of the property prior to the institution of the Chapter X proceeding. Nor does Debentures, Inc. v. Zech, 192 Wash. 339, 73 P.2d 1314 (1937), support appellants' position. There, the mortgagee had actually foreclosed its mortgage and purchased the property. The mortgagor in *Debentures*, the court held, was occupying the premises as agent for the mortgagee, who had already foreclosed and purchased the property. Obviously, the Washington statute, here under consideration, was not applicable to those facts. Other authorities cited by appellants, and their individual arguments on the soundness of the public policy treatment of the Washington statute by its courts, have received our study and attention. We are not impressed. A discussion of the cases and the subjects would add nothing to the validity of our conclusions.

■ Appellants argue that the amendment of R.C.W. 7.28.230 by the Washington legislature in 1969, validating the assignments of rentals amounted to a clarification of existing law. We are forced to a contrary conclusion. In passing on a similar amendment to an Oregon statute, after which the one before us was patterned, we held in Investors Syndicate v. Smith, 105 F.2d 611 (9th Cir. 1939), a bankrupt case, that such legislation *changed, rather than clarified,* the law. In so deciding, we used the following language:

"*We think the amendment deliberately changed the law. It is further contended that the amendment related only to remedy or procedure, but we think it dealt with substantive rights.* The Syndicate, by the mortgages, obtained no rights to the possession of the mortgaged property, or to the rents and profits therefrom, because the stipulations in that respect were invalid when made. The statute indicates no intention of validating such stipulations previously made. *Giving the amendment prospective effect,* as we should (Libby v. Southern Pacific Co., 109 Or. 449, 452, 219 P. 604, 220 P. 1017), *it is applicable only to mortgages subsequently executed.* The provision regarding appointment of a receiver is effective only if there is a mortgage or pledge of the rents and profits, which are absent in the Syndicate mortgages because the stipulations intended for that purpose were invalid." 105 F.2d 621. [Emphasis supplied.]

We might add that the 1969 Washington amendment is practically identical to the 1927 Oregon amendment as construed in the *Investors Syndicate* case.

■ We have little doubt but that the Washington court would follow the logic of *Investors Syndicate* and hold that the Washington legislature deliberately changed the statute and that such change was prospective only, rather than retrospective. Of course, where the statute relates to remedies only and does not effect substantial rights, we recognize an exception to the general rule that amendments are prospective only. Pape v. Dept. of Labor & Industries, 43 Wash.2d 736, 264 P.2d 241 (1953); Tellier v. Edwards, 56 Wash.2d 652, 354 P. 2d 925 (1960). The rights before us are substantive, rather than procedural. We so held in *Investors Syndicate.*

■ We conclude that the rental provisions before us, when read in the light

of the Washington statute, its 1969 amendment, and the Washington decisions construing the former, are contrary to the law and public policy of that state and are void.

## CHAPTER X JURISDICTION

 We agree with appellee that a Chapter X court has exclusive jurisdiction over the debtor and its property under the provisions of § 111 of the Bankruptcy Act [11 U.S.C. § 511], and that the jurisdiction, powers and duties of the court and its officers, where not inconsistent with Chapter X, are at least as great as in a regular bankruptcy proceeding. § 114 of the Bankruptcy Act [11 U.S.C. § 514]. Moreover, § 186 [11 U.S.C. § 586] vested the Trustee, the appellee herein, with title to the debtor's property, the same as a regular bankruptcy trustee would be vested with title to the bankrupt's property under § 70(a) [11 U.S.C. § 110]. § 187 [11 U.S.C. § 587] granted to the appellee-trustee the same rights and powers as a regular bankruptcy trustee would have had under § 47 [11 U.S.C. § 75], to collect the property of the estate. § 257 of the Bankruptcy Act [11 U.S.C. § 657] provides, among other things, that the Trustee has a right to immediate possession of all property of the debtor in *possession of a trustee under a trust deed or a mortgagee under a mortgage.*

The First Circuit, in John Hancock Mutual Life Ins. Co. v. Casey, 134 F.2d 162 (1st Cir. 1943), in affirming the district court's order directing that rent collected by mortgagee should be turned over to the Trustee said: ". . . [W]e have no doubt that the district court has such power . . . the property was in *custodia legis as of the date of the filing of the petition.*" [Emphasis supplied.] We agree. Our recent decisions in Davis v. Security National Bank of Nevada, 447 F.2d 1094 (9th Cir. 1971) and In re Thomas J. Grosso Investment, Inc., 457 F.2d 168 (9th Cir., 1972), although not factually in point, speak on Chapter X proceedings and, in general, support our conclusion that the

Bankruptcy Court had exclusive jurisdiction over the rents as of the date of filing of the reorganization petition on November 13, 1967, and that the appellee is entitled to all rents from that date. Inasmuch as the issue was not before the lower court, we express no opinion on the manner in which the rental income may be used and applied by the Trustee.

Finding no error, we affirm the judgment of the lower court.