MARGARET SCOTT, PLAINTIFF-RESPONDENT, v. THE HOBOKEN BANK FOR SAVINGS IN THE CITY OF HOBOKEN, A BANKING CORPORATION OF THE STATE OF NEW JERSEY, DEFENDANT-APPELLANT.

Submitted October 7, 1940—Decided April 15, 1941.

Before BROGAN, CHIEF JUSTICE, and Justices PARKER and PERSKIE.

For the plaintiff-respondent, *Collins & Corbin* (*Edward A. Markley, James B. Emory* and *Nathan Baker,* of counsel).

For the defendant-appellant, *Townsend & Doyle* (*Mark Townsend* and *Thomas F. Doyle,* of counsel).

The opinion of the court was delivered by

BROGAN, CHIEF JUSTICE. Plaintiff holds a judgment recovered for personal injuries suffered as a result of a fall caused by the neglectful maintenance of a common stairway in the house in which she lived. The facts and circumstances surrounding the accident, injuries and the extent thereof and whether there was negligence in the situation, are not in dispute. A more fundamental question is raised. The defendant, on this appeal from the judgment, argues that no relationship, from which liability could be imputed to it, existed between the plaintiff and it; that it owed no duty to the plaintiff and, consequently, could not as a matter of law be made to answer in damages.

The plaintiff was a month to month tenant of the third floor of a flat in the City of Hoboken, which premises had stood in the name of Louis Reiner, now deceased, and Jennie, his wife, who had mortgaged the premises to the defendant bank on April 25th, 1925. Subsequently the property was conveyed to a corporation owned by them called the Ell & Jay Realty Company. Interest on the mortgage and taxes on the premises being in default, and there being need of repairs, the said corporation entered into an agreement with the mortgagee assigning the rents due and to become due and conferring certain rights upon the mortgagee. Among the rights conferred was power of "entry and distress;" complete authority to collect rents and to sue for same, if unpaid, in the name of the corporate owner for the use of the mortgagee or in its own name as assignee; and to dispossess tenants for non-payment of rent. It further provided that the mortgagee might reduce the existing rents or "rent at reduced rentals" as agent *of the owner*. The agreement provided for the disposition of the income so collected as follows: "To pay the necessary running expenses of said premises, including necessary repairs and decorations, insurance premiums, water rents and commissions for renting of said premises, and for collecting the rents thereof and for alterations, repairs or improvements to said premises as herein provided; to pay to the mortgagee [defendant here] the interest due on the bond and mortgage and to pay the taxes." The mortgagee was empow-

ered to "make such repairs, alterations and improvements to the premises" as in its discretion might seem advantageous, the cost thereof to be paid by it in behalf of the owner; reimbursement to follow from the rents collected. Another clause in the agreement provided that the mortgagee "may appoint an agent for the collection of rents and the management of said premises, but such agent *shall be the agent* of the Ell & Jay Realty Company, Inc., but the rents collected by such agent shall be payable to the party of the second part [mortgagee], by virtue of this agreement;" and, again, that the mortgagee "may in its discretion make contracts for such alterations, repairs and such improvements to the premises as may be necessary, *in its own name* and shall in the first instance pay therefor." The owner then appointed the mortgagee its attorney for the purposes mentioned and to enable it "more efficiently to carry out its duties as assignee herein mentioned," &c. Thereafter a notice was sent to each tenant by the mortgagee bank, through its vice-president, stating that C. H. McQueen, Inc., has been appointed to act as agent to collect rents and directing that the tenant thereafter pay to that agent, or its representative, all rents due and owing; and to the McQueen agency this was written: "We enclose herewith an authorization for the collection of rents \* \* \*," which letter also was signed by the vice-president of the mortgagee bank. Thereafter the plaintiff paid her rent to the appointed agent.

The appellant's main argument rests on the proposition that the court should have entered judgment of nonsuit because the mortgagee was agent of the owner and was not a mortgagee in possession or landlord in fact. If it was either mortgagee in possession or landlord it had the duty of maintaining the property as a prudent owner would. A mortgagee by taking possession assumes the position of owner. *Dawson* v. *Drake,* 30 *N. J. Eq.* 601, 603. A mortgagee in possession must keep the premises in necessary repair. *Scherer* v. *Bang,* 97 *N. J. Eq.* 497, 500.

The plaintiff offered proof of certain facts and circumstances tending to support a conclusion that defendant was a mortgagee in possession and argued that the defendant's

notice to the tenants directing that rents be paid to the named agent would indicate to the ordinary mind that such agent was the mortgagee's representative; that the letter to the McQueen agency likewise indicated that such agent was acting for the mortgagee; that the plaintiff herself at one time sought the position of janitress of the premises and that it was the mortgagee's representative, a bank official, who passed on her qualifications and decided that such work should be done by a man rather than a woman.

Certain of the interrogatories answered by the defendant deserve consideration on the issue. In answer to the question as to whether defendant was in possession, management and control of the premises, a negative answer was not given. The defendant preferred to say that it had a written assignment of rents; rents were being collected by an agent who, after deducting disbursements, paid the balance to the defendant pursuant to assignment. In answer to the question as to whether plaintiff was a tenant by virtue of defendant's letting, the answer was "No, the tenant was such before the defendant had the assignment;" and in answer to a question concerning whether the staircase had been inspected it was answered that the staircase was inspected once each week and "generally more often." In answer to the request that the defendant state when the staircase in question was repaired after the date of the accident, it was said that ten brass nosings were installed on or about June 3d, 1938. This repair job was done on the order of Mr. Anderson, an employe of the McQueen agency, after conferring with defendant about the matter. The answers to the interrogatories indicate abundant familiarity with management of the premises.

From the time of the rent assignment agreement there is plenary evidence that the owner had no voice or control in the management of the property. The owner remained as tenant in the premises and paid rent to the agent. The evidence, in our view, supports the conclusion of the jury that the bank was in possession and exercised control and management of the premises. It is argued by the defendant that its acts were done as agent of the owner and the agreement between those parties is pointed to as controlling proof of

that relationship. But this agreement to which the plaintiff was a stranger does not bind or conclude the plaintiff regardless of its control over the parties who executed it. This plaintiff was entitled to consider the whole situation objectively. She could not be bound by an agreement to which she did not assent. It is our view that the acts of a mortgagee under the circumstances, determine whether or not possession and management of the premises have been undertaken by the mortgagee. It is a fact issue, the assignment agreement being some evidence, just as any other pertinent exhibit might be, in support of the defendant's position. No case in point is cited by either party to this appeal. The text-writers, however, treat the subject and set down certain principles which we think are applicable and sound. For instance, "* * * but the mere fact that a mortgagee receives the rents and profits does not constitute him a mortgagee in possession, unless he takes the rents in such a way as to take out of the hands of the mortgagor the management and control of the estate." 41 *C. J.* 613, § 580. Here we think the jury was entitled to find that the defendant did in fact enter upon management of the house to the exclusion of the owner. If defendant was in possession it was answerable for improvident or negligent management. *Cf.* 19 *R. C. L.* 331, § 106. We take it to be self-evident that a mortgagee in possession is answerable for its torts and indeed has all the duties which burden an owner.

In this case there was testimony that the plaintiff had asked the agent (McQueen, Inc.,) to have the defective step in the staircase fixed and his answer was that he would take the matter up with the bank. While the relationship of landlord and tenant, as a rule, arises by express contract, the relationship may arise by implication. 18 *Amer. & Eng. Cyc.* 164, § 2, *sub-div.* 2; also that the relation of landlord and tenant may be created although the landlord is not the owner of the property. 35 *C. J.* 1210, § 537; 1 *McAdam, Landlord & Tenant,* 5.

The case of *Rizzi* v. *Ross,* 117 *N. J. L.* 362, relied upon by appellant for reversal of this judgment, is not an apt authority. There the owner, Ross, although he had given an assign-

ment of rents and appointed an agent as trustee to collect same for the mortgagee and to make repairs, nevertheless had in the agreement with the agent retained some voice or authority in the matter of "substantial" repairs to the premises. Whether the repairs, the lack of which presumably caused the accident, in the Ross case were "substantial" was a question for the jury. A nonsuit of the plaintiff in that case was reversed on the ground that the owner had not stripped himself of all power and control over the premises. Here there was proof, extra the assignment of rent contract, indeed in contravention of it, from which the jury might well conclude that the assignee had in fact assumed complete control over the premises not alone as to the collection of rents and payment of bills but also as to the making of repairs and that the owner, in the position of a rent paying tenant, had no control.

A reading of the assignment agreement makes it clear beyond question that the owner in this case had no veto power over the mortgagee in the matter of repairs. Quite to the contrary, the matter was in the exclusive discretion of the defendant. There was no authority in the matter left in the principal—it had all been delegated to the agent. We recognize the well established rule that an owner may not unburden himself of the duty owed to tenants to keep the common ways and equipment of a multiple dwelling reasonably safe. That duty cannot be transferred to another so that the owner is free of it. But this rule does not at all mean that another, such as here a mortgagee, may not by assuming control and management render himself liable for negligence in the matter which he has undertaken.

It is next argued that it was error to allow plaintiff to amend the complaint; that the statute of limitations controlling the pleaded cause had run. It appears that the bank at first was named as owner, later the permitted amendment designated it as mortgagee in possession. The amendment did not create a new cause of action. *Magliaro* v. *Modern Homes, Inc.*, 115 *N. J. L.* 151, 157. The amendment consisted of a corrected description of the status of the defendant.

The other points relied upon by the apellant require little

discussion. One of them has to do with the court's comment on certain proof tendered to show control in the defendant. The argument is that the jury was permitted to construe the contract and indeed in effect alter it. This argument has no legitimate basis. The contract was received as any other exhibit as partial proof of the disputed issue. The exception to the court's charge upon which the point is based is not as specific as it might be. In addition it is multiplicitous (*Cf. Martin* v. *Studebaker Corp.,* 102 *N. J. L.* 612), but in any event without merit. The plaintiff did not sue on the contract. It was offered solely to show the right of the defendant to entry.

The final point is that the court erred in the acceptance of certain testimony over the defendant's objection and exception. We have examined the record on these matters. Some of the evidence was immaterial; other questions called for a conclusion from the witness. The information that thus obtained place in the record, however, was not, in our judgment, prejudicial or harmful, and should not effect a reversal.

The judgment is affirmed, with costs.