[No. 158-41372-2. Division Two. June 29, 1970.]

W. C. FITCHETT *et al., Respondents,* v. L. L. BUCHANAN *et al., Appellants.*

*Kenneth C. Hawkins,* for appellants.

*Hovis, Cockrill & Roy* and *Ted Roy,* for respondents.

PEARSON, J.—The plaintiffs, Lucille Fitchett and John Berger, were injured while watching automobile races from the grandstand at the Yakima Speed Bowl on August 20, 1966. A collision of two racing cars at the north turn of the oval race track caused a wheel from one of them to become disengaged. The wheel was propelled over a 4-foot rock wall (called a crash wall), then up an incline (some 13 vertical feet in height) which separated the track from the grandstand, then over a 4-foot wire fence and handrail for the stands and into the lower seat area, where the plaintiffs were sitting.

This action for personal injuries was originally brought against the lessee operators of the track, Harry R. Grundy and Edythe Grundy and the alleged owners and lessors, L. L. Buchanan and Laura Buchanan. Subsequently, by amended complaint, plaintiffs joined the additional defendants, alleging that on December 29, 1965, the defendants, L. L. Buchanan and wife, executed a deed conveying legal title to the premises to Arlen Bruce Buchanan and wife, Jean S. Patton, Jr. and wife, Elmer J. Hillstrom and wife, and Marilyn May Buchanan. The additional defendants were the three daughters and son of the defendants, L. L. Buchanan and wife.

The gravamen of the complaint was that the lessees were negligent in providing bleachers with insufficient barriers to protect the paying public. The lessors-owners were in turn claimed to be subject to liability for leasing the facility with insufficiently guarded bleachers, for the purpose of conducting automobile races for public viewing and entertainment.

The defendants, L. L. Buchanan and wife, sought to have the complaint dismissed on motion for summary judgment. This motion was denied. The case proceeded to trial, resulting in a plaintiffs' verdict against all the defendants. Subsequently, the trial court granted a judgment notwithstanding the verdict to all the defendants except Harry Grundy and wife, and L. L. Buchanan and wife. No appeal has been taken from this order. Judgment on the jury verdict was entered from which only the defendants, L. L. Buchanan and wife, (hereafter called appellants) have appealed.

The 19 assignments of error raise two questions: (1) Should the trial court have ruled as a matter of law there was no liability as to the appellants? (2) Was the jury properly instructed as to the duty, if any, of owner-lessors to paying patrons where land is leased for a purpose involving admission of the public?

Both of these questions involve basically the same legal issue. What duty, if any, did the appellants owe to the paying patrons of the automobile race track which they

had leased to the defendants Grundy, and was there an issue of fact for the jury that such duty was breached?

 It is appellants' contention that absent some contractual basis of liability, a landlord may be held liable to the guest of his tenant only for breach of the same duty as he would owe to his tenant, namely, the failure to disclose hidden defects known or which should have been known to him, but unknown to the tenant at the time the tenancy is commenced. The statement of this general rule appears in *Taylor v. Stimson*, 52 Wn.2d 278, 324 P.2d 1070 (1958).

It is argued from this rule that the defect causing the injuries, namely, the wheel flying from the racing car and into the grandstand, was completely beyond his control and that he, as lessor, had no control over the race drivers, nor was he in a position to advise guests of any hazards. It is further argued that there was no hidden defect in the premises at all, since the condition of the grandstand was open and visible to all, tenant and patrons alike. *See Conradi v. Arnold*, 34 Wn.2d 730, 209 P.2d 491 (1949).

In rejecting appellants' motion for summary judgment, motion for directed verdict and motion for judgment notwithstanding the verdict, the trial court applied one of the exceptions to the general rule quoted above. That exception is stated in Restatement (Second) of Torts § 359 (1965) at 246:

A lessor who leases land for a purpose which involves the admission of the public is subject to liability for physical harm caused to persons who enter the land for that purpose by a condition of the land existing when the lessee takes possession, if the lessor

(a) knows or by the exercise of reasonable care could discover that the condition involves an unreasonable risk of harm to such persons, and

(b) has reason to expect that the lessee will admit them before the land is put in safe condition for their reception, and

(c) fails to exercise reasonable care to discover or to remedy the condition, or otherwise to protect such persons against it.

Such exception appears to be recognized in this state by dictum in *Regan v. Seattle,* 76 Wn.2d 501, 458 P.2d 12 (1969), where at page 504 it is stated:

Given this relationship, [landlord-tenant] there is still a well recognized exception to the general rule that a landlord is not liable for injuries to the guests of his tenant. *If a landlord, with actual or constructive knowledge of a defect in his premises, leases these premises for a purpose involving the admission of the public then he is subject to liability for injuries to the public caused by this defect. See* Restatement of Torts § 359 (1934); Prosser, Torts 415-18 (3d ed. 1964); Annot., 17 A.L.R.3d 873 (1968); *cf., Greene v. Seattle Athletic Club,* 60 Wash. 300, 111 P. 157 (1910). Plaintiffs urge that this case falls within the public use exception. However, liability under this exception only extends to injuries suffered by members of the public and which occur in that portion of the premises intended to be open to the public. *See* Restatement of Torts, § 359, comments a and b (1934); Prosser, Torts 418 (3d ed. 1964); Annot. 17 A.L.R.3d 873, 890, 894 (1968), and cases cited therein. We hold that this exception does not apply to a participant in a race who was injured on the race course and not in any area thrown open to members of the public.

(Italics ours.)

We must determine if the evidence in this case warranted the trial court in submitting this theory of liability to the jury as to the appellants.

For approximately 20 years, L. L. Buchanan and wife were the owners of a 120-acre tract of land near Yakima. Until about 1957, 30 acres of this tract had been used as a dairy farm. In that year, appellants leased the 30 acres to a Mr. Kidder, at which time the race track development was commenced. After completion of the track, the annual rental increased from $600 per year to approximately $3,000. Appellants did not participate in building the race track nor the grandstand facility. The defendants Grundy first leased the facilities in 1963 for race track purposes. That lease and the extensions thereafter obligated the tenant to keep the premises in repair. The last written lease,

executed in January of 1965, required an annual rental of $3,250.

The appellant, L. L. Buchanan, testified that in 1962, as a part of an estate plan, he commenced transferring the property on which the racing facility was situated to his three daughters and son (the additional defendants who were dismissed from the suit on post-trial motion). According to appellant, the real transfer took place in 1964, but for "tax purposes" the deed was not filed until December 29, 1965. However, the testimony is without dispute that the children had never assumed any control over the property at the time of the accident. During the entire period from 1962 to 1967, the defendant, L. L. Buchanan, negotiated all leases and renewals, collected the rents, expended the rentals on improving the race track and his adjoining property, and paid income taxes on the rentals. He negotiated for the sale of the racing facility after the deed to his children was recorded. He signed the leases in his own name as lessor.

With reference to the safety of the grandstand facilities, Buchanan left such features entirely up to the tenant. He testified that he never discussed the improvements with the various tenants nor did he concern himself with the safety factors.

Viewing the testimony in the light most favorable to the plaintiffs, the jury could have found that the type of occurrence involved was common in automobile racing. There had been one prior fatal accident from a similar incident at this track, involving the death of a boy. Because of the lack of slope of the track on the north end, wheels were more likely to disengage in that area. The juxtaposition of the grandstand to the track, with the grandstand situated in line with vehicles rounding the northwest turn, made the viewing area vulnerable to the type of accident which occurred. A wheel which disengaged on the north turn at high speed would strike the 4-foot crash wall with the effect of propelling it into the air. The incline which separated the crash wall from the grandstand was anything but an ideal barrier, since it sloped upward toward the grand-

stand. The low wire fence situated at the top of the incline was inadequate to stop a wheel traveling at the anticipated speed of 45 miles per hour. The jury could have believed from the expert testimony that race track custom required the erection of a vertical, 12-foot, cyclone-type fence to separate the stands from the track.

The justification for the rule quoted above from Restatement (Second) of Torts § 359, *supra* (and which constitutes an exception to the general rule of non-liability of the lessor for dangerous conditions existing at the time of the lease) lies in the lessor's responsibility to the public, which he is not free to shift or delegate to the lessee in any case where he has reason to expect that the lessee will admit the public before the land is put in reasonably safe condition for their reception.

In the present case, appellant did not concern himself at all with the safety features of the grandstand, despite the occurrence of the fatality.[1] We think that occurrence alone should have put him on constructive notice of the hazardous condition of the facility and gave rise to an affirmative duty on his part to see that his lessee properly guarded against such hazard.

The lessee's obligation to repair the premises is no insulation from the liability created by this theory. *See* Restatement (Second) of Torts § 359 (1965) comment i at 248:

> The lessor is subject to liability for only such injuries as are caused to invitees of his lessee by the dangerous condition during the time within which the lessor had reason to believe that it would remain unchanged. *The mere fact that a lessee is under a duty to make the premises safe or disclose their dangerous condition before admitting others, is not enough to entitle the lessor to expect that the land will be made safe after such time as is necessary to give the lessee an opportunity to perform his duty. Even the lessee's covenant to repair is insuffi-*

---

[1] While appellant disclaimed knowledge of this fatality until after the present accident, the jury was entitled to disbelieve this testimony in light of the publicity surrounding the event.

*cient to entitle the lessor to expect that the land will be
made safe before the public is admitted.*

(Italics ours.)

The public policy behind this exception to the general rule of non-liability is particularly apparent where the public in large numbers pays for admittance to view automobile racing. The lessor, under such circumstances, may not rely upon his lessee or the contract terms requiring the lessee to make the premises safe. Too much is at stake. He must affirmatively see that premises which he leases for profit are free from unreasonable risks to the crowds which are invited. Those risks may not be apparent at the beginning. However, where they come to his attention, and certainly a fatal accident to a spectator on a prior occasion should bring such risk forcibly to his attention, he may not continue to remain uninformed about available safety precautions as did the appellant in this case. The public policy is well expressed in W. Prosser, The Law of Torts (3d ed. 1964) at 415 and 416:

*Premises Leased for Admission of the Public*

A third exception arises where the land is leased for a purpose which involves the admission of the public. There is then quite general agreement that the lessor is under an affirmative duty to exercise reasonable care to inspect and repair the premises before possession is transferred, to prevent any unreasonable risk of harm to the public who may enter. The earliest decisions involved wharves and piers, and the principle has been applied to amusement parks, theatres and other halls of entertainment, beaches, hotels, and baseball grandstands. Various reasons for the landlord's liability have been advanced. It has been regarded as an extension of his obligation to the public outside of the land, and the defective condition has been called, quite unjustifiably, a nuisance. Some courts have said that the lessor has "invited" the public to enter, or that he has represented, or has authorized the lessee to represent, that the premises are safe for public admission. Perhaps the best explanation is merely the arbitrary one that his responsibility to the public is so great that he will not be permitted to shift it to the tenant, and he may not allow his land to be used in a

manner which involves a public, rather than a private, danger. This is borne out by the decisions holding that the mere agreement of the tenant to repair or remedy the condition will not of itself relieve the landlord of liability, but if the agreement is that the land is not to be opened to the public until the repairs have been made, the lessor may rely on the lessee, and his responsibility is terminated.

(Footnotes omitted.)

We think there was a factual issue for the jury as to the liability of appellant under this theory of liability. The court's instruction No. 6[2] properly submitted this theory to the jury if the deed to his children did not relieve him from the duties of a lessor.

The question here is whether one who divests himself of bare legal title without surrendering any of the other incidents of ownership is relieved of his duties as lessor.[3]

■ It is a general rule that one who assumes to be the owner of real property, and who, as such, assumes to control and manage it, cannot escape liability for injuries resulting from its defective condition by showing want of title in himself. For a collection of the cases recognizing this rule, *see Liability of one exercising the rights of an owner of realty for injuries due to its condition, as affected by want of legal title.,* Annot., 96 A.L.R. 1068 (1935), supplemented by 130 A.L.R. 1525 (1941). Some 15 states[4] have to

---

[2]Instruction No. 6 provided:

"If you find that the lessors knew, or in the exercise of reasonable care should have known, the lessees intended these premises to be used as an automobile race track, the lessors had a duty to exercise reasonable care to inspect and make any repairs necessary to prevent an unreasonable risk of harm to members of the public who attended races conducted on the premises."

[3]In this regard we are not reviewing the action of the trial court in granting judgment notwithstanding the verdict to the defendants who held bare legal title to the premises, inasmuch as no appeal was taken from that ruling.

[4]California, Connecticut, Illinois, Kansas, Kentucky, Massachusetts, Michigan, Minnesota, Missouri, Montana, New York, Ohio, Pennsylvania, and the United States. *See* 96 A.L.R. 1068 (1935); 130 A.L.R. 1525 (1941). Since those annotations were printed, other states have

date recognized this rule and while the Supreme Court of this state has apparently not had occasion to pass upon the question, we deem the rule to have merit inasmuch as the risks should logically fall upon those who have the benefits. There has been no contrary authority cited to us with reference to this rule or its application and our own research has disclosed none. We deem it a sound rule, worthy of adoption.

The trial court was, in our opinion, correct in ruling as a matter of law that appellants were, in fact, the lessors of this property and subject to the corresponding legal duties.

Appellants also contend that there should be no liability in this case, since the condition of the premises was as well known to the patrons as to the lessor. In this regard, the trial court by instruction No. 8[5] submitted the defense of volenti non fit injuria to the jury. We think under the circumstances of this case, it was a question for the jury to decide whether or not such defense should preclude recovery.

The trial court likewise permitted the jury to consider the defense of independent intervening act by instruction No. 9.

We have considered the instructions as a whole and believe that they fairly and impartially submitted to the jury the issues and theories raised by the evidence.

Judgment is affirmed.

ARMSTRONG, C. J., and PETRIE, J., concur.

---

Petition for rehearing denied September 8, 1970.

---

recognized the rule. *See Scott v. Hoboken Bank,* 126 N.J.L. 294, 19 A. 2d 327 (1941), 127 N.J.L. 564, 23 A.2d 399 (1942); *Ide v. St. Cloud,* 150 Fla. 806, 8 So. 2d 924 (1942).

[5]Instruction No. 8 provided:

"A patron of a race track has a right to assume that those charged with the duty of providing a safe viewing area have complied with that duty and he is not required to make a critical examination to determine whether the premises are, in fact, safe. However, a patron cannot recover if he knowingly comprehends a danger and voluntarily exposes himself to it."