[No. 27570-8-II. Division Two. February 25, 2003.]

ROBERTA LYNN COLEMAN, *Individually and as Parent and Guardian, Appellant*, v. CRAIG R. HOFFMAN, ET AL., *Respondents.*

---

*Bradley R. Marshall* (of *The Marshall Firm*), for appellant.

*Stephen M. Hansen*; *Bernard G. Lanz* and *James A. Santucci* (of *The Lanz Firm, P.S.*); and *R. McCluskey*, for respondents.

BRIDGEWATER, J. — Roberta Lynn Coleman appeals the trial court's grant of summary judgment on her common law premises liability claims against Anderson Hunter, Hoffman, and Olympic Coast Investment, Inc. (OCI). We reverse in part, holding that genuine issues of material fact exist regarding possession of the Sound View II complex by Anderson Hunter and Hoffman. Also, we recognize that mere collection of rents does not establish possession and therefore affirm that portion of the trial court's order granting summary judgment to OCI.

*Facts*

In July 1997, Roberta Coleman lived with her six-month-old daughter, Makaliah Paige, at the Sound View II apartment complex in Pierce County. On July 4, as Coleman prepared food for the evening's celebration, an unrelated child named Paris, age 9 years, walked Makaliah in a stroller along the balcony. The offending balcony was located outside of Coleman's apartment and was thus part of a common area. As Paris pushed Makaliah, the stroller's wheel caught in a rotten portion of carpet, causing the stroller to lurch forward into the balcony's rotten railing. Makaliah fell through the broken railing and onto the ground one story below. She sustained a broken arm, fractured skull, and other injuries.

OCI brokers secured real estate investments. In late 1996, OCI arranged a loan to David Brown and Steve Clem, who owned and were refinancing Sound View II. The loan was secured by a deed of trust, of which OCI was benefi-

ciary, which carried a standard assignment of rents provision. Anderson Hunter, a law firm, funded the loan.

In early April, after Brown and Clem's default, Anderson Hunter commenced judicial foreclosure proceedings and directed that OCI begin collecting and forwarding rents (OCI remained as beneficiary under the deed of trust). To comply, OCI instructed Sound View II tenants to begin making payments to OCI rather than Brown and Clem. And, to protect its investment, Anderson Hunter began paying utility and repair costs.

Sometime before Makaliah's injury, although disputed, Anderson Hunter hired Craig Hoffman to make repairs and manage the apartment complex. Hoffman previously tried to purchase the complex from Brown and Clem, but the transaction never closed. When Anderson Hunter hired Hoffman, which apparently occurred after the failed transaction, Hoffman expected to purchase the complex at the foreclosure sale.

On July 22, 1997, deciding against judicial foreclosure, Anderson Hunter sent a notice of default and of trustee's sale to Brown and Clem. The sale occurred on October 31, 1997. Hoffman was the purchaser.

Coleman, individually and as parent and guardian of Paige, sued Anderson Hunter, Hoffman, and OCI. She alleged several causes of action, including a common law premises liability claim. The trial court granted the defendants' summary judgment motions on all claims. Coleman appeals only the trial court's order dismissing her common law premises liability claim.

## Analysis

■ ■ When reviewing an order of summary judgment, we engage in the same inquiry as the trial court. *Wilson v. Steinbach*, 98 Wn.2d 434, 437, 656 P.2d 1030 (1982). Summary judgment is appropriate only if the pleadings, affidavits, depositions, and admissions on file demonstrate the absence of any genuine issues of material fact and that the

moving party is entitled to judgment as a matter of law. CR 56(c). "In a summary judgment motion, the burden is on the moving party to demonstrate that there is no genuine issue as to a material fact and that, as a matter of law, summary judgment is proper." *Atherton Condo. Apartment-Owners Ass'n Bd. of Dirs. v. Blume Dev. Co.*, 115 Wn.2d 506, 516, 799 P.2d 250 (1990).

We consider all facts submitted and all reasonable inferences from them in the light most favorable to the nonmoving party. *Wilson*, 98 Wn.2d at 437. The nonmoving party may not rely on speculation, argumentative assertions that unresolved factual issues remain, or on having its affidavits considered at face value; after the moving party has submitted adequate affidavits, the burden shifts to the nonmoving party to set forth specific facts sufficiently rebutting the moving party's contentions and disclosing the existence of a material issue of fact. *Seven Gables Corp. v. MGM/UA Entm't Co.*, 106 Wn.2d 1, 13, 721 P.2d 1 (1986). A "material fact" is one upon which the outcome of the case depends in whole or in part. *Morris v. McNicol*, 83 Wn.2d 491, 494, 519 P.2d 7 (1974). Ultimate facts, conclusions of fact, or conclusory statements are insufficient to raise a question of fact. *Grimwood v. Univ. of Puget Sound, Inc.*, 110 Wn.2d 355, 359-60, 753 P.2d 517 (1988).

## I. POSSESSION LIABILITY

Coleman appeals only the summary dismissal of her common law premises liability claim. Her theory is that the various respondents were mortgagees in possession and therefore can be held liable for the condition of the premises.

■■ In an action for negligence, a plaintiff must prove four basic elements: (1) the existence of a duty, (2) breach of that duty, (3) resulting injury, and (4) proximate cause. *Tincani v. Inland Empire Zoological Soc'y*, 124 Wn.2d 121, 127-28, 875 P.2d 621 (1994). The threshold determination of whether a duty exists is a question of law. *Tincani*, 124 Wn.2d at 128.

■ ■ Although no Washington case is directly on point, other jurisdictions impose a duty of care on mortgagees in possession. *See Mollino v. Ogden & Clarkson Corp.*, 243 N.Y. 450, 154 N.E. 307 (1926). Various treatises also support mortgagee liability:

> A mortgagee who properly acquires "mortgagee in possession" status is held accountable for that possession . . . to third parties. In general, the mortgagee in possession is held to the standard of the provident owner to use reasonable diligence to keep the property . . . in a good state of repair.

RESTATEMENT (THIRD) OF PROPERTY, *Mortgages*, § 4.1, at 189 (1997).

> In order for a mortgagee to be responsible for damages to third parties caused by unsafe conditions on the property, the mortgagee must exercise dominion and control over the property; a mortgagee out of possession of the mortgaged premises, with no management or control, is not liable for defects therein. Constructive possession is not sufficient to constitute control.

62 AM. JUR. 2D *Premises Liability* § 8, at 356 (1990).

Although the cases and treatises cited throughout our opinion refer to "mortgagee in possession" liability, the determinative issue is not whether each respondent is properly titled a "mortgagee in possession," but whether each respondent actually possessed the premises. This inquiry is proper because the common law duty of care existing in premises liability law is incumbent on the *possessor* of land. *See Strong v. Seattle Stevedore Co.*, 1 Wn. App. 898, 466 P.2d 545, *review denied*, 77 Wn.2d 963 (1970); *see also* 62 AM. JUR. 2D *Premises Liability* § 6, at 354 (1990) ("Anyone who assumes control over premises, no matter under what guise, assumes the duty to keep them in repair."); *Fitchett v. Buchanan*, 2 Wn. App. 965, 972, 472 P.2d 623 ("It is a general rule that one who assumes to be the owner of real property, and who, as such, assumes to control and manage it, cannot escape liability for injuries resulting from its defective condition by showing want of title in himself"), *review denied*, 78 Wn.2d 995 (1970). As

such, whether someone is a mortgagee is not critical. The critical point is the possession itself. Nonetheless, as certain cited cases deal with "mortgagees in possession," and because the parties use the phrase, we employ the "mortgagee in possession" and "possession" language interchangeably.

"A possessor of land is (a) a person who is in occupation of the land with intent to control it or (b) a person who has been in occupation of land with intent to control it, if no other person has subsequently occupied it with intent to control it, or (c) a person who is entitled to immediate occupation of the land, if no other person is in possession under Clauses (a) and (b)." *Ingersoll v. DeBartolo, Inc.*, 123 Wn.2d 649, 655, 869 P.2d 1014 (1994) (citing Restatement (Second) of Torts § 328E (1965)).

A. Anderson Hunter

By its affidavits, Anderson Hunter established that it collected rents from the tenants after Brown and Clem's default. *Clise v. Burns* involved a trustee who, under a deed of trust, received rents, issues, and profits from mortgaged property. *Clise v. Burns*, 175 Wash. 133, 26 P.2d 627, 29 P.2d 1119 (1933). The *Clise* court stated that the trustee's actions did not constitute possession and control for mortgagee in possession purposes. *Clise*, 175 Wash. at 136-37.

However, Coleman produced two relevant letters and the deposition testimony of an Anderson Hunter attorney that, together, weigh heavily in our analysis. First, a May 24, 1999 letter prepared by Paul Carpenter, a member of the Anderson Hunter firm and Hoffman's attorney, states, "at the time of the alleged accident (7/4/97) we, together with [OCI], had, for all practical purposes *taken over control of [the premises]* in that we could not locate and/or communicate with [Brown and Clem]." (Emphasis added.) Clerk's Papers (CP) at 58. Although conclusory as to control, the letter is in the nature of an admission by Anderson Hunter and therefore factors into our analysis. Second, an October 1997 letter from OCI's senior vice-president to Carpenter states "that Craig Hoffman had been heading the 'facelift'

since last April and Anderson Hunter pool was advancing funds to him for that purpose." CP at 63. Finally, Carpenter indicated at his deposition that Anderson Hunter began paying utility bills on June 11 and paid repair costs to a plumbing company in May or June 1997.

## B. Hoffman

In his affidavit, Hoffman stated that he did not own the premises until November 1997, that he did not make any repairs or collect rents at the premises until August 1997, and that he did not fire the apartment manager until September 1997.

But Coleman produced several other documents that bear on our analysis of Hoffman's possession. First, the October 1997 letter stated that Hoffman had been making repairs since April 1997, which was before the accident. Second, in her declaration in opposition to summary judgment, Coleman states that, in May or June 1997, "Mr. Hoffman and Billy began tearing up the floorboard in front of my apartment. The work lasted for about two days. By the time they ended, the sinkhole was repaired . . . ." CP at 93. Third, in his deposition, Carpenter stated that "[m]y recollection is Craig Hoffman terminated [the apartment manager's] service." CP at 125. Although the record does not reflect the specific date of termination, the line of questioning at the deposition indicates that Hoffman fired the manager sometime in May, June, or July 1997.

## C. OCI

OCI carried its burden of establishing the absence of an issue of material fact regarding its possession. In its summary judgment motion, OCI stated that it has never had an ownership interest in the premises; that it had no involvement in the repair, maintenance, control, or operation of the premises; and that, in servicing Anderson Hunter's loan to Brown and Clem, it activated the assignment of rents provision contained in the deed of trust and collected those rents during May, June, and July 1997. Coleman establishes no other issue of fact as to OCI's possession.

The mortgagee possession issue was addressed in two cases from other jurisdictions that involved facts similar to those presented here. *Scott v. Hoboken Bank for Savings in City of Hoboken*, 126 N.J.L. 294, 19 A.2d 327 (1941), was a premises liability case where the plaintiff sued the mortgagee bank for injuries received in a fall on an ill-maintained stairway. The court stated that the bank "had in fact assumed complete control over the premises not alone as to the collection of rents and payment of bills but also as to the making of repairs and . . . the owner, in the position of a rent paying tenant, had no control." *Scott*, 19 A.2d at 330.

*Scott* aligns perfectly with *Pantano v. Erie County Savings Bank of Buffalo*, 257 A.D. 451, 13 N.Y.S.2d 932 (1939), which was also a personal injury suit against a mortgagee bank. In *Pantano*, the bank had "the exclusive right to lease the property, to bring, prosecute and settle summary proceedings for the removal of tenants, or actions at law for the recovery of rents or of any damage done premises or for the abatement of any nuisance thereon, [and] to make necessary repairs and alterations to the building." *Pantano*, 13 N.Y.S.2d at 934. The court allowed suit against the bank, holding that the bank possessed and controlled the premises. *Pantano*, 13 N.Y.S.2d at 934.

■ In an apartment building, factors indicating a mortgagee's possession include the indicia of control that landlords normally exhibit. *Scott* and *Pantano* demonstrate certain such factors: leasing, making repairs, and paying bills. Additional factors could include making management decisions and receiving and responding to tenant complaints.

Hoffman performed two acts that show possession and control: he made repairs and a managerial decision. Similarly, Anderson Hunter performed acts indicating possession and control: it paid utility bills and repair costs, collected rents, and hired Hoffman. But the facts show that OCI only collected rents; under *Clise*, this action alone does not establish possession and control. Thus, as to Hoffman and Anderson Hunter, Coleman carried her burden in

establishing genuine issues of fact regarding possession of the Sound View II. On her claim against OCI, Coleman has failed to establish an issue of fact. Therefore, the trial court erred in granting summary judgment in favor of Hoffman and Anderson Hunter, but it did not err in granting summary judgment to OCI.

## II. INAPPLICABLE DEFENSES

Other than disputing possession, the respondents have several different theories as to why summary judgment was proper. First, Anderson Hunter and OCI claim that they owed no duty because RCW 7.28.230 prevents a mortgagee from obtaining possession of a mortgaged premises; and, if a mortgagee was in possession here, the possession was not rightful. Second, Hoffman contends that he was merely a prospective purchaser and, therefore, he owed no duty to Coleman or her daughter. Finally, Hoffman claims that the rotten railing was a patent defect for which he cannot be liable.

A. Lien Theory Jurisdiction Defense

Anderson Hunter and OCI assert that, because RCW 7.28.230 prohibits a mortgagee from recovering possession without a foreclosure and sale, they could not have been mortgagees in possession. This argument would preclude premises liability for any mortgagee unless and until the mortgagee purchases the premises at a foreclosure sale and then takes possession.

██ RCW 7.28.230 guarantees a mortgagor his right to possession of the mortgaged property until foreclosure and sale. *See Norlin v. Montgomery*, 59 Wn.2d 268, 271, 367 P.2d 621 (1961). A mortgagor does not lose his right to possession by failing to make payments on the mortgage, by moving out of the community, or by abandonment. *Howard v. Edgren*, 62 Wn.2d 884, 885, 385 P.2d 41 (1963). Although RCW 7.28.230 effectively precludes a mortgagee from obtaining possession of property to the mortgagor's exclusion, the statute does not bear on the question of whether a

mortgagee actually possesses the property. Actual possession, not a right to possession, is the critical inquiry in premises liability cases.

To illustrate, in *Howard v. Edgren*, after the mortgagor defaulted but prior to foreclosure, the mortgagee *took possession* of the mortgaged property and ran his business there for 19 months. *Howard*, 62 Wn.2d at 885. The court forced the mortgagee to pay a reasonable rental value to the mortgagor, who had abandoned, because of that possession. *Howard*, 62 Wn.2d at 885. The important point in *Howard* is not that the mortgagor was owed rent for the mortgagee's possession, but that the mortgagee in fact possessed the property during a time when RCW 7.28.230 gave the mortgagor the sole right to possession.

A similar point is illustrated by a trespasser seeking title by adverse possession. Before the statutory period has run, the person has no right to possession, but it would be untenable to say that the person, assuming he meets the requirements for adverse possession, is not actually in possession.

Case law in other jurisdictions is directly on point and supportive:

> The [mortgagee] asserts that because it was not entitled to immediate occupation of the land under our mortgage law, it could not have been a "possessor" of the property in question for purposes of premises liability. Although we agree that the [mortgagee] had no legal right of possession before May 3, 1990, possession for purposes of premises liability does not turn on a theoretical or impending right of possession, but instead depends on the actual exercise of dominion and control over the property.

*Kubczak v. Chem. Bank & Trust Co.*, 456 Mich. 653, 575 N.W.2d 745, 748 (1998). Because premises liability depends on actual possession rather than a right of possession, the Anderson Hunter-OCI argument fails.

The second prong of the Anderson Hunter-OCI argument is that, if they possessed the premises, that possession was

not rightful; and, because rightful possession is required for mortgagee in possession status, Anderson Hunter and OCI could not have been mortgagees in possession. Whether Anderson Hunter's or OCI's possession, if any, was rightful is not important. As stated previously, premises liability depends on actual possession, not on whether a possessor is titled a "mortgagee in possession." Thus, we need not decide whether Anderson Hunter and/or OCI rightfully possessed the premises.

## B. Prospective Purchaser Defense

Hoffman claims that he cannot be liable for the condition of the premises because he was merely a prospective purchaser when the injury occurred. Hoffman's theory hinges premises liability on ownership or title. But as possession and control, not title, is the threshold inquiry in common law premises liability, Hoffman's argument fails. *See Jarr v. Seeco Constr. Co.*, 35 Wn. App. 324, 327-28, 666 P.2d 392 (1983); *Fitchett*, 2 Wn. App. at 972. Despite his status as a prospective purchaser, Hoffman may be liable if Coleman establishes that he possessed the premises.

## C. Patent Defect Defense

Finally, Hoffman claims that he cannot be liable to Coleman because the rotten railing was a patent defect. The rule in Washington is that a landlord is not liable for injuries caused by patent defects. *Frobig v. Gordon*, 124 Wn.2d 732, 735, 881 P.2d 226 (1994). But this rule applies only where a tenant is injured on the demised premises. It does not apply to injuries that occur in a common area. As to common area injuries, a landlord is liable if his negligent maintenance or negligent act causes an injury.[1] *Geise v. Lee*, 84 Wn.2d 866, 529 P.2d 1054 (1975). Although certain defenses, i.e., assumption of risk or comparative fault, may preclude or otherwise affect Hoffman's liability, the patent defect defense does not apply here because the injury occurred in a common area.

---

[1] Because a landlord's ultimate liability for common area injuries depends on an issue of fact, i.e., whether he exercised reasonable care, we limit our review to deciding whether the respondents owed the plaintiffs a duty.

The trial court's order of summary judgment on Coleman's common law premises liability claim is reversed as to Hoffman and Anderson Hunter but affirmed as to OCI.

HOUGHTON and ARMSTRONG, JJ., concur.