# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| PATRICIA L. SCHEETZ, an individual, | No. 56910-8-II |
| Appellant, | |
| v. | |
| THE CITY OF GIG HARBOR, a municipal corporation, and HARBOR CROSSING OWNERS ASSOCIATION d/b/a HARBOR CROSSING HOMEOWNERS ASSOCIATION, a Washington corporation. | UNPUBLISHED OPINION |
| Respondents. | |

PRICE, J. — Patricia L. Scheetz appeals the superior court's order granting summary judgment for the City of Gig Harbor (City) and Harbor Crossing Homeowners Association (HOA) for a lawsuit Scheetz filed as a result of a fall. Scheetz argues that the superior court erred when it determined that the hillside, fence, and retaining wall where Scheetz fell was an open and obvious hazard. Scheetz argues that there are issues of material fact that preclude summary judgment on this issue. Scheetz also argues that there is a genuine issue of material fact about whether the HOA had a duty based on possession and control of the property.

We reverse the superior court's order granting summary judgment because there is a genuine issue of material fact about whether the hillside, fence, and retaining wall were an open and obvious hazard. Moreover, we determine there is a genuine issue of material fact about whether the HOA possessed the area sufficiently to create a duty to Scheetz.

FACTS

I. BACKGROUND

Harbor Crossing is a planned neighborhood in Gig Harbor. In January 2007, the City approved the deed for the neighborhood. The deed stated that the owners of the property "dedicate to the use of the public forever all streets, roads and lanes not shown as private hereon and dedicate the use thereof for all public purposes . . . ." Clerk's Papers (CP) at 126. The deed also stated, "Tracts A through E . . . are open space/landscape tracts to be dedicated to and maintained by the [HOA]." CP at 131. The deed also carried the following requirement:

> All land shown in the final development plan as common open space, and landscaping and/or planting contained therein, shall be permanently maintained by and conveyed to one of the following
>
> A. An [HOA] . . . .
>
> B. A public agency which agrees to maintain the common open space and any buildings, structures or other improvements which have been placed upon it.

CP at 132. The deed included a plat map that depicted a Tract B located next to lot 89 and adjacent to a street right-of-way.

In March 2007, the owners of Harbor Crossing created governing documents, including the Declaration of Covenants, Conditions and Restrictions for Harbor Crossing (CCRs). The HOA was organized under the CCRs.

The CCRs included section 7.2, in which the HOA committed to maintaining the common areas, providing:

> The [HOA] *shall maintain*, in accordance with the Community-Wide Standard, *the Common Areas* as well as:
>
> (a) supplemental landscaping, maintenance and repairs to property dedicated or conveyed to [the City] or other public entities (to the extent consistent with any conditions imposed by such entities) and *which may include public rights-of-way within or abutting the Property*, public parks and play areas, public trails, drainage areas and storm water facilities[.]

CP at 140 (emphasis added).

The HOA created a map (HOA map) of the neighborhood to locate lots and tracts. The HOA map showed that Tract B was south of Baltic Street. Tract B was also marked with an asterisk, and the map key stated that asterisks showed locations of "Common Area" tracts owned by the HOA. CP at 143. However, the HOA map's depiction of Tract B did not entirely match the plat map from the 2007 deed. The plat map showed that some of the area south of Baltic Street was not part of the HOA's Tract B, but the HOA map showed that Tract B extended the full length of an extension of property south of Baltic Street.

The HOA also created a map (timer map) showing the locations of battery-operated timers for their sprinkler system. The timer map was similar to the HOA map in terms of the extensiveness of Tract B, but it also depicted a sprinkler timer located on lot 89.

The HOA employed a landscaping company to perform maintenance, cleanup, and irrigation system duties in the common areas, including on Tract B. In order to assist the landscaping company for these duties, the HOA gave the landscaping company both the HOA map and the plat map.

In 2020, Scheetz lived on lot 89, adjacent to Tract B. Tract B was wooded but had a "very clear" footpath next to Scheetz's property. CP at 192. On the far side of Tract B, away from lot

89, the wooded area steepened and became more of a hillside. At some point in the wooded area, Tract B ended and the City's right-of-way shown on the plat map began, but there were no signs, boundary monuments, or markers.

In late June, Scheetz and her nephew decided to take a walk through Tract B. The area next to her property began with a relatively flat walking path along the top of a steep hill. Closely below the walking path, down the hill, was a visible split-rail cedar fence. The fence was comprised of wooden posts placed directly into the dirt ground and two horizontal cedar rails connecting each post. Down the hill, immediately on the other side of the fence, was the top of a retaining wall. Fourteen feet below the top of the retaining wall was a straight drop to Baltic Street.

While walking on the path, Scheetz lost her footing and fell down the hill. As Scheetz tumbled down the hill, she collided with the fence. Rather than stop her fall, the fence broke apart because the fence posts had rotted. Unabated, Scheetz rolled over the top of the retaining wall and fell 14 feet directly onto a gardening bed next to Baltic Street. Scheetz sustained serious injuries.

The precise location where Scheetz slipped and began her fall is unclear in the record,[1] but she came to rest on the City's right-of-way just south of Baltic Street.

## II. LAWSUIT AND DISCOVERY

Scheetz filed a complaint for negligence against the HOA and the City, asserting that both the HOA and the City were liable to her for her injuries under a theory of premises liability.

---

[1] There is conflicting information in the record about where Scheetz actually slipped prior to colliding with the fence and falling to the pavement. Some portions of the record suggest that her slip occurred on the part of the hillside that was owned by the HOA as Tract B. Other portions of the record suggest she slipped on a part of the hillside that had been conveyed to the City.

Scheetz was deposed by the HOA and the City. Scheetz stated during the deposition that she thought that the fence was decorative and agreed that she thought it was "more for looks rather than safety." CP at 47. However, Scheetz also stated that at the time she was on the path, she "was aware there was a fence, so [she] felt that measure of security: There is a fence." CP at 189.

Scheetz hired Stan Mitchell, an architect and civil engineer, as an expert witness. After his inspection of Tract B, Mitchell provided a declaration confirming that the fence posts were loose and rotted. Mitchell also opined that a layperson would not have known the fence was a hazard, it looked strong and substantial, and an average person "would not anticipate that the fence posts would be rotted at their bases . . . ." CP at 117.

An HOA member was also deposed. The member stated the HOA's landscaping company received both the HOA map and the plat map to guide where it should do its maintenance work. Additionally, while she did not know the exact location of the sprinkler timer that the timer map showed was on lot 89, she assumed the timer was actually located on Tract B.

The HOA sent requests for admission (RFAs) to the City about ownership of the property and fence. The first RFA stated, "Admit that you own the property where the accident occurred." CP at 67. The City objected, but answered "the City admits the area where plaintiffs allegedly fell was within the City's right of way." CP at 67.

The second RFA stated, "Admit that you owned the fence on the property where the accident occurred." CP at 67. The City objected again, but answered "the City admits it owns the fence near the location plaintiff allegedly fell." CP at 67-68. The next RFA asked the City to admit that it replaced the fence in the area after the incident, and the City admitted it did.

The fourth RFA stated, "Admit that you have sole responsibility for the sidewalk adjacent to the property where the accident occurred and where plaintiff sustained injuries." CP at 68 (emphasis omitted). The City denied it was solely liable for the sidewalk.

### III. SUMMARY JUDGMENT

The HOA filed a motion for summary judgment. The HOA argued that it did not owe any duty for property that is adjacent to its own property and, in any event, it could not be liable for Scheetz's injuries because the hillside and retaining wall were an obvious hazard. To support their argument that Scheetz fell onto adjacent property, the HOA relied on deposition testimony by Scheetz's niece who confirmed that the location where she found Scheetz after the fall was on the City's right-of-way. The HOA also relied on the deposition testimony of an HOA member, who stated that if the HOA maintained Tract B, it only maintained the five feet adjacent to lot 89.

The codefendant City agreed with the HOA that summary judgment should be granted for both defendants because the hazardous condition that caused Scheetz's injuries was open and obvious. However, the City also took the position that, if the hazard was not open and obvious, there was a question of fact as to whether the HOA possessed the land sufficiently to create a duty to Scheetz related to her injuries. In support of its argument, the City relied on the HOA member's deposition testimony that the landscape company maintained the common areas and sprinkler timer and, to undertake these duties, the landscape company received the map that showed Tract B was a common area that included the hillside.

Scheetz opposed the HOA's summary judgment by arguing that whether the hazardous condition was open and obvious was an issue of material fact for the jury to decide. Scheetz supported her opposition, in part, with her own declaration. She claimed she was familiar with

6

Tract B and understood that the split-rail fence was there to guard against falling off of the retaining wall onto the sidewalk below when enjoying the common area of Tract B. Scheetz also agreed with the City that there was a question of fact as to whether the HOA had a duty to Scheetz because it was the possessor of the hillside.

The superior court granted summary judgment for both the HOA and the City, determining that the hazardous condition that caused Scheetz's injuries was open and obvious.

Scheetz appeals.

## ANALYSIS

### I. LEGAL PRINCIPLES

We review a superior court's grant of summary judgment de novo. *Crisostomo Vargas v. Inland Wash., LLC*, 194 Wn.2d 720, 728, 452 P.3d 1205 (2019).

Summary judgment may be granted if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. CR 56(c); *Meyers v. Ferndale Sch. Dist.*, 197 Wn.2d 281, 287, 481 P.3d 1084 (2021). A genuine issue of material fact exists if reasonable minds could disagree on the conclusion of a factual issue controlling the outcome of the litigation. *Sartin v. Estate of McPike*, 15 Wn. App. 2d 163, 172, 475 P.3d 522 (2020), *review denied*, 196 Wn.2d 1046 (2021). If there is a genuine issue of material fact, an order granting summary judgment must be overturned. *Id.* When determining whether to grant summary judgment, we view all facts and inferences in the light most favorable to the nonmoving party. *Id.*

## II. LIABILITY FOR DANGEROUS CONDITIONS

The HOA argues that the hazardous condition was open and obvious and it could not have anticipated that Scheetz would encounter the condition. The City joins the HOA's argument that the hazardous condition was open and obvious.[2] We disagree.

"In an action for negligence, a plaintiff must prove four basic elements: (1) the existence of a duty, (2) breach of that duty, (3) resulting injury, and (4) proximate cause." *Coleman v. Hoffman*, 115 Wn. App. 853, 858, 64 P.3d 65 (2003).

Washington has adopted the Restatement (Second) of Torts sections 343 and 343A (Am. L. Inst. 1965). *Iwai v. State, Emp. Sec. Dep't*, 129 Wn.2d 84, 93, 915 P.2d 1089 (1996). Restatement (Second) of Torts section 343 states:

> A possessor of land is subject to liability for physical harm caused to his [or her] invitees by a condition on the land if, but only if, he [or she]
>
> (a) knows or by the exercise of reasonable care would discover the condition, and should realize that it involves an unreasonable risk of harm to such invitees, and
>
> (b) should expect that they will not discover or realize the danger, or will fail to protect themselves against it, and
>
> (c) fails to exercise reasonable care to protect them against the danger.

Restatement (Second) of Torts section 343A states in part:

> (1) A possessor of land is not liable to his [or her] invitees for physical harm caused to them by any activity or condition on the land whose danger is known or obvious to them, unless the possessor should anticipate the harm despite such knowledge or obviousness.

---

[2] The City additionally argues that Scheetz has not provided a sufficient record to allow us to review the issues raised on appeal and we should deny Scheetz's appeal. However, it is unclear what deficiency the City believes exists in the record that would prevent us from addressing Scheetz's appeal, and none are apparent.

In other words, landowners or possessors are generally not liable for injuries caused by hazardous conditions that are open and obvious. *See Tincani v. Inland Empire Zoological Soc'y*, 124 Wn.2d 121, 139, 875 P.2d 621 (1994); *see also Sjogren v. Properties of Pac. Nw., LLC*, 118 Wn. App. 144, 150, 75 P.3d 592 (2003). A comment from the Restatement clarifies that " 'Obvious' means that both the condition and the risk are apparent to and would be recognized by a reasonable [person], in the position of the visitor, exercising ordinary perception, intelligence, and judgment." RESTATEMENT (SECOND) OF TORTS § 343A cmt. b. Whether the hazardous condition is open and obvious is a question of fact. *Sjogren*, 118 Wn. App. at 149 (whether darkened stairway was open and obvious when the plaintiff was unaware that lights on the stairs were out when she entered the stairway was a question of fact).

Here, the HOA and the City argue that the hazardous condition of the premises was open and obvious, precluding liability for Scheetz's injuries. Scheetz argues that the hazardous condition was not obvious because it was not apparent that the fence was rotted.

The HOA suggests that the dangerous condition was the hillside and the drop-off over the retaining wall—clearly open and obvious hazards. On the other hand, Scheetz suggests that the analysis should focus directly on the rotted fence—an aspect that was indisputably not open and not obvious. Neither position is entirely correct.

Here, the dangerous condition was the full circumstances created by the combination of these features: the hillside, fence, and retaining wall together. When encountering the hazard, all three of these features would form the picture for a person deciding whether to confront the hazard. Indeed, the hillside and precipitous 14-foot drop to the street would present as a very different risk to a person if either there was *no fence* of any kind, or if there was a solid 10-foot steel barrier.

Identifying the hazard as only the hillside and retaining wall would not represent the true nature of the hazardous condition when the perceived character of the fence would influence whether someone would think the hillside and retaining wall were safe.

Considering the entirety of the circumstances, reasonable minds could differ about whether the hazard was open and obvious. Scheetz claimed she thought the fence would guard Harbor Crossing residents from falling over the edge of the retaining wall. And, from afar, the fence appeared to be sturdy. But in the end, even if the fence posts were not weakened by rot, reasonable minds could differ about whether this fence would have offered sufficient safety from the drop-off.

In other words, a reasonable person could conclude that, regardless of the presence of this fence, the circumstances were an open hazard. But a reasonable person could also potentially conclude that, based on the slope and the drop to the street, the fence, constructed in the way it presented, offered sufficient safety from falling over the retaining wall—safety that was not actually provided because of the hidden defect of the fence.

Because reasonable minds could differ about whether the condition of the entire circumstances presented to Scheetz that day was open and obvious, viewing the evidence in the light most favorable to Scheetz, there is a genuine issue of material fact that precludes summary judgment. We reverse the superior court's order granting summary judgment to the HOA and the City.

### III. DUTY RESULTING FROM POSSESSION

Even with this question of fact, the HOA argues that we should still affirm the superior court's order granting summary judgment in its favor because it did not own or possess the hillside

sufficiently to owe a duty to Scheetz. The HOA further argues that the City admits that it owns, controls, and maintains the hillside.

Scheetz makes several arguments that the HOA owed her a duty, but predominately argues that the HOA was obligated to, and did, maintain the hillside and, therefore, had a duty to invitees as the possessor. We determine there is a genuine issue of material fact about whether the HOA possessed the land sufficiently to create a duty to Scheetz.

In a premises liability case, the possessor of the land owes a duty of care. *Coleman*, 115 Wn. App. at 859. The possessor is the party that occupies and controls the land. *Adamson v. Port of Bellingham*, 193 Wn.2d 178, 187, 438 P.3d 522 (2019) (citing RESTATEMENT (THIRD) OF TORTS: LIAB. FOR PHYS. & EMOT. HARM § 49 (AM. L. INST. 2012)). In *Adamson*, our Supreme Court explained, " '[A] person is in control of the land if that person has the authority and ability to take precautions to reduce the risk of harm to entrants on the land . . .' " and " '[e]ven a possessor who cedes temporary control of property to another may be responsible as a possessor for conditions on the land that are not in the effective control of the other because of the temporal and practical limits of the other's possession.' " *Id.* (some alterations in original) (quoting RESTATEMENT (THIRD) OF TORTS: PHYS. & EMOT. HARM § 49 cmt. c, d). We may also look "to the specific terms of [an] agreement to see who had authority and ability to reduce risk of harm . . . ." *Id.* Moreover, control over the premises does not have to be exclusive. Multiple actors can share control; "control over some areas may be shared, and each actor is subject to the duties . . . with respect to the control exercised." RESTATEMENT (THIRD) OF TORTS: PHYS. & EMOT. HARM § 49 cmt. d.

"The threshold determination of whether a duty exists is a question of law." *Coleman*, 115 Wn. App. at 858. However, a genuine issue of material fact may exist about whether a party

exercised possession and control over land. *See Id.* at 862-63 (the court reversed an order granting summary judgment on duty because there was a genuine issue of material fact about whether defendants possessed and controlled the property).

Here, the HOA argues, as a matter of law, that it had no duty for any injuries related to the hillside where Scheetz slipped and fell. The HOA points out that the City admitted in discovery responses that "the area where [the plaintiff] fell was within [the City's] right of way . . . ."[3] Resp't HOA Resp. Br. at 33. The City also admitted that it "owned the fence on the property where the accident occurred" and it replaced the fence after the accident. CP at 67-68.

Scheetz responds that the CCRs and the HOA map demonstrate that the HOA had sufficient authority and control over the entire hillside at issue to be liable, regardless of the City's admissions.

There are several examples that illustrate some evidence of HOA authority and control over the area in question. First, section 7.2 of the CCRs created a mandatory requirement for the HOA to maintain all common areas: "The [HOA] *shall maintain*, in accordance with the Community-Wide Standard, *the Common Area*s . . . ." CP at 140 (emphasis added). This section of the CCRs further provided that this obligation would extend to "maintenance and repairs to property dedicated or conveyed to City of Gig Harbor or other public entities (to the extent consistent with any conditions imposed by such entities) and *which may include public rights-of-way within or abutting the Property* . . . ." CP at 140 (emphasis added).

---

[3] It is unclear from the record whether the City's answer is intended to address the location of where Scheetz slipped, where she contacted the fence, or where she landed after her drop to the pavement.

Second, the deed itself obligated either the HOA or a public agency "which agrees" to permanently maintain the common areas reflected on the deed. CP at 132. While the City admitted in discovery responses to having taken responsibility to repair the fence, the record on appeal does not contain an express agreement from the City to permanently maintain the common areas generally, or the general area where Scheetz began her fall, nor is the City's admission dispositive given the possibility of multiple actors sharing authority to control the area.

Third, there is evidence the HOA was performing maintenance within the hillside area. The record contains reference to the HOA contracting with a landscaping company to perform maintenance and cleanup of all common areas, and providing the landscaping company with the HOA map that shows all of the hillside as HOA common area. The record also contains some evidence that a battery-operated sprinkler timer may be located within the hillside area. An HOA member testified that she did not know the exact location of a battery-operated sprinkler timer (shown on the timer map to be located on lot 89), but assumed the timer was on Tract B. A possibility remains that the HOA-owned timer is located within the hillside area where Scheetz may have slipped, showing that the HOA may be utilizing the hillside for its purposes.

Whether a party exercised possession and control over land sufficient to create liability in this type of case can be a question of fact. *See Coleman*, 115 Wn. App. at 862-63. As the above recitation of the record shows, there are unresolved issues here about whether the HOA had sufficient "authority and ability to take precautions to reduce the risk of harm" at the hillside where Scheetz slipped. *Adamson*, 193 Wn.2d at 187. Because these unresolved factual issues are material to the HOA's motion for summary judgment, granting the motion was error.

CONCLUSION

We reverse the superior court's order granting summary judgment to the City because there is a genuine issue of material fact of whether the hazardous condition was open and obvious. Moreover, we determine there is a genuine issue of material fact about whether the HOA possessed the hillside to create a duty to Scheetz.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

PRICE J.

We concur:

GLASGOW, CJ

WORSWICK, J.